**F I L E D**

MAY 23 1997

Date

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MELODEE SHORES, DEBORAH CRUTCHER,
JANET MCCLUNG, DARLENE SARMIENTO,
CARMEN PENA, VICKY GOODSON,
MARGERY TERRY, SUSAN SHARP,
CAROL ATKINS, PATRICIA JOHNSON,
LILLY LIGHT and DONNA GALLAGHER,
individually and on behalf of all
other persons similarly situated,

    Plaintiffs,

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff In Intervention,

vs.                      No.  95-1162-CIV-T-25E

PUBLIX SUPER MARKETS, INC.,    CLASS ACTION

    Defendant.

_____/

## CONSENT DECREE

319

# TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . 2

II.     PURPOSES OF THE CONSENT DECREE . . . . . . . . . 2

III.    DEFINITIONS . . . . . . . . . . . . . . . . . . 3

IV.     LITIGATION BACKGROUND . . . . . . . . . . . . . 10

V.      JURISDICTION . . . . . . . . . . . . . . . . . . 18

VI.     EFFECTIVE DATES AND DURATION OF CONSENT DECREE . . . 19

VII.    SETTLEMENT CLASS . . . . . . . . . . . . . . . 21

VIII.   RELEASE OF CLAIMS . . . . . . . . . . . . . . . 24

        A.   Release of Claims by Private Plaintiffs and
             Settlement Class. . . . . . . . . . . . . . 24

             1.   Scope of Judicial Release. . . . . . . . 24

             2.   Release of Claims by Class Representatives.
                  . . . . . . . . . . . . . . . . . . . 25

        B.   Release of Claims by the EEOC. . . . . . . . 26

        C.   No Tolling of Sexual Harassment Claims. . . . 28

        D.   No Bar to Future Claims. . . . . . . . . . . 28

IX.     MISCELLANEOUS PROVISIONS . . . . . . . . . . . . 29

        A.   Calculation of Time. . . . . . . . . . . . . 29

        B.   No Admission of Liability. . . . . . . . . . 29

        C.   Modification and Severability of the Consent
             Decree. . . . . . . . . . . . . . . . . . . 29

        D.   Duty to Support and Defend the Decree. . . . 31

X.  GENERAL EQUITABLE PROVISIONS . . . . . . . . . . . 31

   A.   General Injunctive Provisions. . . . . . . . 31

   B.   Standard for Judicial Enforcement by Contempt.
        . . . . . . . . . . . . . . . . . . . . . 34

   C.   Prevention of Sexual Harassment. . . . . . . 36

   D.   Publix's Internal Mechanisms for Monitoring
        Compliance. . . . . . . . . . . . . . . . . 37

        1.   Designation of Compliance Official. . . . . 37

        2.   Duties of the Compliance Official. . . . . 39

        3.   Internal Complaint Procedure. . . . . . . 40

        4.   Disciplinary Policy. . . . . . . . . . . 45

   E.   Communication of Consent Decree Requirements
        and EEO Practices to Officers and Associates. . 46

XI.  DISPUTE RESOLUTION PROCEDURES . . . . . . . . . . 47

XII. TRAINING AND EDUCATION . . . . . . . . . . . . . 51

   A.   Development of Videotape, Leaflet and
        Announcement. . . . . . . . . . . . . . . . 51

        1.   Orientation Videotape. . . . . . . . . . 51

        2.   Summary Leaflet. . . . . . . . . . . . . 53

   B.   Training of Division and Regional Management. . 54

   C.   Training of District Managers and Store
        Managers. . . . . . . . . . . . . . . . . . 54

   D.   Additional Training of Assistant Store
        Managers, Department Managers and Department
        Assistant Managers. . . . . . . . . . . . . 55

   E.   Training of Human Resources Personnel. . . . . 57

XIII.   JOB SELECTION PROCEDURES  . . . . . . . . . . . 59

    A.   Registration of Interest for Selecting
       Retail Store  Management and Non-Management
       Positions.  . . . . . . . . . . . . . . . . . 59

        1.   Standard for Establishing a Registration
           of Interest Program. . . . . . . . . . . 59

        2.   ROI for Management Positions. . . . . . . 60

        3.   ROI for Non-Management Positions. . . . . 67

    B.   Selection Standards and Minimum
       Qualifications. . . . . . . . . . . . . . . . 70

    C.   Goals. . . . . . . . . . . . . . . . . . . . 73

        1.   General Principles. . . . . . . . . . . . 73

        2.   Goal Positions in Retail Stores. . . . . 75

        3.   Above-Store-Level Positions. . . . . . . 77

    D.   Evaluation Programs. . . . . . . . . . . . . 77

XIV.   REPORTING AND RECORDKEEPING  . . . . . . . . . . 79

    A.   Documents to Be Preserved for the
       Duration of the Decree. . . . . . . . . . . . 79

    B.   Documents to Be Maintained for Two Years. . . . 80

    C.   Access to Documents. . . . . . . . . . . . . 81

    D.   Reporting Schedule. . . . . . . . . . . . . . 82

    E.   Contents of the Semi-Annual Progress Reports. . 82

    F.   Addresses for Reporting. . . . . . . . . . . 87

XV.   MONETARY AWARDS PROCEDURE  . . . . . . . . . . . 87

    A.   Monetary Awards to Class Members. . . . . . . 87

    B.   Allocation of Total Class Award to Individual
       Monetary Awards. . . . . . . . . . . . . . . 88

C.  Eligibility for Individual Monetary Awards and
    Award Value. . . . . . . . . . . . . . . . . . . 89

    1.  Type 1 Awards. . . . . . . . . . . . . . 89

    2.  Type 2 Awards. . . . . . . . . . . . . . 91

D.  Qualified Class Members' Type 2 Awards. . . . . 92

E.  Other Allocations. . . . . . . . . . . . . . . 96

F.  Recipients' Responsibilities. . . . . . . . . . 98

G.  Awards Arbitrator. . . . . . . . . . . . . . . 98

H.  Procedure for Review of Award Requests. . . . . 99

I.  Allocation of Monetary Awards. . . . . . . . 103

J.  Distribution of Uncashed Awards. . . . . . . 104

K.  Opt-Out Credits. . . . . . . . . . . . . . . 104

L.  Costs. . . . . . . . . . . . . . . . . . . . 108

XVI.  ATTORNEYS' FEES, COSTS AND EXPENSES . . . . . . . 109

A.  Basis for Award of Fees, Costs and Expenses. . 109

B.  Payment of Award. . . . . . . . . . . . . . 111

**Exhibits**

A.    Initial Minimum Qualifications for Goal Positions

B.    Company Policy Statement on Harassment, Including
    Sexual Harassment

C.    Notice and Summary of Consent Decree

D.    Notice to Employees

E.    Check Release

-iv-

F.      Settlement Class Member Declarants' and Class
        Representatives' Liquidated Formula Awards

G.      Release of Claims

I.    INTRODUCTION

This Consent Decree **has been** voluntarily entered into by the parties engaged in this litigation, and has been submitted to the United States District Court for approval.  This Decree finally resolves the litigation now pending between the parties.

This Consent Decree includes a joint statement of the purposes of the Decree, a description of the history of the litigation, and various substantive provisions agreed upon by the parties.   No particular provision has been agreed to because of any prior Court order.   Rather, the parties have met and reached voluntary agreement on the entire contents of this Decree.


II.   PURPOSES OF THE CONSENT DECREE

The parties have entered into this Consent Decree for the following purposes:

A.   To resolve all disputes covered by this Consent Decree in such a way as to avoid further expensive and protracted litigation;

B.   To ensure equal employment opportunity for females working within Publix's retail operations;

C.   To assist Publix in achieving that portion of its Mission whereby Publix states that it is "dedicated to the

2

dignity, value and employment security of [its] associates" and in demonstrating its commitment to gender diversity in the workplace, consistent with its associates' appropriately informed, freely expressed and documented job interests;

D.   To increase the awareness of females concerning the various career options available to them in Publix's retail stores, and to ensure that they are fully and fairly considered for promotional opportunities in which they are interested;

E.   To create an expedited procedure for distributing a monetary settlement to eligible members of the Settlement Class and for implementing equitable relief pursuant to the terms of this Decree; and

F.   To provide finality to the resolution of all claims and defenses asserted in this action.


III. **DEFINITIONS**

The following terms when used in this Decree, in addition to the terms defined elsewhere in the Decree, shall have the following meanings:

A.   "Approval Date" means the date upon which the Court signs this Decree, after having determined that it is fair, adequate and reasonable to the Class as a whole, after: (i) notice to the Class, (ii) an opportunity to opt out of the

3

Settlement Class with respect to monetary relief, (iii) an opportunity to submit timely objections to the Decree, (iv) appropriate discovery of the specifics of any such timely objections, and (v) a hearing on the fairness of the settlement.

B.    "Best Efforts" means implementing a plan reasonably designed to comply with the specified objectives to which the best efforts are directed.

C.    "Class" and "Settlement Class" are defined in Sections IV and VII, respectively.

D.    "Class Counsel" means the Law Offices of Saperstein, Goldstein, Demchak & Baller of Oakland, California, the Law Offices of Thomas A. Warren of Tallahassee and Tampa, Florida, and Charles G. Burr, P.A., except that Charles G. Burr, P.A. shall not be included as Class Counsel after the Approval Date.

E.    "Class Representatives" means Carol Atkins, Deborah Crutcher, Donna Gallagher, Vicky Goodson, Patricia Johnson, Lilly Light, Janet McClung, Carmen Pena, Darlene Sarmiento, Susan Sharp, Melodee Shores and Margery Terry, who were certified by the Court to represent the Class pursuant to Fed. R. Civ. P. 23.

F.    "Court" means the United States District Court for the Middle District of Florida, Tampa Division.

4

G.   "Eligible Associates" means those associates who have registered their interest for the pertinent job pursuant to the Registration of Interest provisions of Section XIII.A. of the Decree, and have been determined to meet the Minimum Qualifications for the pertinent job established and maintained by Publix pursuant to the terms of Section XIII.B. In accordance with common usage at Publix, hourly and managerial employees are referred to as "associates" throughout this Decree.

H.   Equal Employment Opportunity Commission ("EEOC"), a Plaintiff-in-Intervention in the lawsuit, is an agency of the United States of America charged with the enforcement of federal anti-discrimination laws including Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"). Counsel for the EEOC in this action may be contacted by writing to either: (1) the Office of the Regional Attorney, Equal Employment Opportunity Commission, Miami District Office, One Biscayne Tower, 2 South Biscayne Boulevard, Suite 2700, Miami, Florida 33131, or (2) the Office of the General Counsel, Equal Employment Opportunity Commission, 1801 L Street N.W., Washington, DC 20507.

I.   "Final Approval" means the signing of this Decree on the Approval Date by the United States District Court for the Middle District of Florida, and either: (1) the expiration of

5

the time for filing of a direct appeal from the Court's approval of the Decree without the filing of a notice of appeal, or (2) if a timely direct appeal is filed, the final resolution of that appeal (including any requests for rehearing and/or petitions for certiorari), resulting in final judicial approval of the Consent Decree.

J.   "Final Approval Date" is the date upon which Final Approval of this Decree is attained.

K.   "Gender Discrimination" or "Discriminating on the basis of Gender" means unlawful discrimination against associates on the basis of their sex or gender, including but not limited to retaliation against an associate because he or she has opposed practices he or she believes in good faith to constitute unlawful sex or gender discrimination or has participated in processes designed to obtain relief for alleged unlawful sex or gender discrimination.   For all purposes of this Decree, "Gender Discrimination" and "Discriminating on the basis of Gender" shall not include: (1) sexual harassment, (2) retaliation for opposing or complaining about alleged sexual harassment, (3) retaliation for participating in a process designed to obtain relief for alleged sexual harassment, and/or (4) discrimination with respect to not being hired by Publix.

6

L.   "Goal Positions" **means** the following retail store positions, as to which the current job code number is stated in parentheses:

> Store Manager (101)
> Assistant Store Manager (102)
> Second Assistant Store Manager (103)
> Produce Manager (140)
> Assistant Produce Manager (141)
> Meat Manager (150)
> Assistant Meat Manager (151)
> Bakery Manager (170)
> Assistant Bakery Manager (171)
> Grocery Clerk (211), Dairy Clerk (214) and
>    Frozen Food Clerk (215)[1]
> Produce Clerk (231)
> Meat Cutter (222)
> Meat Cutter Apprentice (223)
> Baker (251)
> Baker Apprentice (253)

M.   "Goal-Related Geographical Area" means the Company-wide or Region-wide area over which goals for pertinent jobs are calculated. The Goal-Related Geographical Areas shall be as follows:

1.   The Goal-Related Geographical Area shall be Company-wide for the positions of Store Manager, Assistant Store Manager, Second Assistant Store Manager, Produce Manager, Assistant Produce Manager, Meat Manager, Assistant Meat Manager, Bakery Manager, and Assistant Bakery Manager.

2.   The Goal-Related Geographical Area shall be Region-wide for the positions of Grocery Clerk, Dairy Clerk

---

[1]     The goals for these three clerk positions will be set and monitored jointly.

7

and Frozen Food Clerk; Produce Clerk; Meat Cutter; Meat Cutter Apprentice; Baker; and Baker Apprentice.

N.   "Liability Period" means the period between May 22, 1991 and the Preliminary Approval Date for employees of Publix's retail stores in Florida and South Carolina, and between October 19, 1991 and the Preliminary Approval Date for employees of Publix's retail stores in Georgia and Alabama.

O.   "Minimum Qualifications" means those discrete objective qualifications (such as service requirements, educational requirements, job knowledge tests, etc.) which: (1) are used by Publix as preliminary, independent qualifiers, such that the failure to meet the qualification is, itself, used by Publix to preclude further consideration of the individual for a Goal Position; (2) can be isolated for purposes of determining adverse impact; and (3) may be applied by Publix to screen associates who have registered interest in a position, prior to determination of goals under this Decree. The current Minimum Qualifications for Goal Positions are set forth in Exhibit A, attached hereto.

P.   "Mission" or "Publix Mission," as defined by Publix, means the following:

> Our Mission at Publix is to be the premier quality food retailer in the world.
>
> To that end we commit to be:

8

- Passionately focused on <u>Customer Value</u>,
- Intolerant of <u>Waste</u>,
- Dedicated to the <u>Dignity</u>, <u>Value</u> and <u>Employment Security</u> of our <u>Associates</u>,
- Devoted to the highest standards of <u>stewardship</u> for our <u>Stockholders</u>, and
- Involved as Responsible <u>Citizens</u> in our <u>Communities</u>.

Q.    "Private Plaintiffs" means the Class Representatives in their capacity as the party litigants in the <u>Shores</u> action.

R.    "Preliminary Approval Date" means the date upon which the Court entered an Order preliminarily approving this Decree, pending notice, an opportunity to opt out of the Settlement Class or submit objections to the Decree, and a fairness hearing thereon.   That date is January 27, 1997.

S.    "Publix," "Defendant" and "the Company" mean Publix Super Markets, Inc.   For all purposes and terms of this Decree, only the retail operations of Publix are covered hereunder, and the pharmacy departments thereof shall be expressly excluded from coverage.

T.    "Selection Standards" means any factors considered by Publix in making a final selection decision, other than Minimum Qualifications.

U.    "Term of this Consent Decree" is the period from the Approval Date until the expiration of the Decree pursuant to Section VI.

9

IV. **LITIGATION BACKGROUND**

On July 19, 1995, **eight** female current or former
associates of Publix, Melodee Shores, Deborah Crutcher, Janet
McClung, Darlene Sarmiento, Carmen Pena, Vicky Goodson,
Margery Terry, and Susan Sharp, filed a complaint on behalf of
themselves as individuals and on behalf of other similarly
situated females against Publix Super Markets, Inc., pursuant
to Title VII, the Human Rights Act of 1977, Florida Statutes,
Chapter 760 (1991) ("Florida HRA"), and the Florida Civil
Rights Act of 1992, Florida Statutes, Chapter 760 (1992)
("Florida CRA"). The action, entitled Shores, et al. v.
Publix Super Markets, Inc., Civil Action No. 95-1162-CIV-T-25-
E ("the Shores action"), brought in the United States District
Court for the Middle District of Florida, Tampa Division,
alleges that Publix has engaged in a policy or pattern or
practice of discrimination on the basis of gender against the
Private Plaintiffs and against allegedly similarly situated
female associates of Publix's retail operations in initial and
subsequent job assignments and store assignments, hours,
training, education, skills and career development,
performance appraisals, promotion, full-time status,
compensation, and other benefits and conditions of employment.
The complaint further alleges that Publix has engaged in a
pattern or practice of retaliating against female associates

10

who protested against such alleged conduct. Publix categorically denies that it has engaged in any policy or pattern or practice of gender discrimination or retaliation against the Private Plaintiffs or against any other female current or former associates, and maintains that its female associates have had equal employment opportunity and are assigned to jobs and stores, trained, evaluated, promoted, paid, provided benefits and accorded full-time status on the same terms and conditions as Publix's similarly situated and interested male associates. Publix further contends that it is in compliance with all applicable state and federal fair employment laws.

The parties commenced discovery on August 10, 1995, directed to issues regarding the suitability of the eight female associates' gender discrimination claims for class treatment, the adequacy of the eight female associates to represent an alleged class of Publix's retail store female associates, the relevance of conduct by the United Food and Commercial Workers Union to the Shores lawsuit, and other class certification issues.

On November 2, 1995, Private Plaintiffs filed a motion for leave to file a First Amended Complaint to add Carol Atkins, Patricia Johnson, Lilly Light and Donna Gallagher as additional named plaintiffs. The Court granted Private

11

Plaintiffs' motion and **their** Substituted First Amended Complaint was filed.

On November 22, 1995, Private Plaintiffs filed their motion requesting that the Court certify this case as a class action. Private Plaintiffs requested the Court to certify a class pursuant to Federal Rule of Civil Procedure 23 that includes all of Publix's female management and non-management associates who have worked, are working, or will work in Publix's retail operations in Florida, Georgia or South Carolina, except for those females who have worked only in Publix's pharmacy operations. Private Plaintiffs supported their motion with, _inter alia_, declarations of putative class members; excerpts of deposition testimony from the Private Plaintiffs and from a number of Publix's corporate, regional, district and store-level managers; documents obtained from Publix during discovery; and declarations from expert witnesses.

On November 28, 1995, the EEOC filed a motion for leave to intervene as a plaintiff in this action. Pursuant to Title VII, this motion was premised on an EEOC Commissioner's Charge filed against Publix on March 22, 1992, alleging, _inter alia_, that Publix had engaged in a pattern or practice of discrimination against its female retail associates by the alleged failure to promote females into management positions

12

and by assigning and classifying females in a manner that limits their employment opportunities for management and craft worker positions because of sex ("the EEOC's Commissioner's Charge").

On December 12, 1995, Publix filed its opposition to Private Plaintiffs' motion for class certification, contending that Private Plaintiffs' claims were not suitable for class treatment under Rule 23.   Publix supported its opposition with, *inter alia*, declarations of female management and non-management associates; excerpts of deposition testimony from the Class Representatives and from a number of Publix's corporate, regional, district and store-level managers; Company documents; and declarations from expert witnesses.

On December 15, 1995, Private Plaintiffs filed a memorandum in support of the EEOC's motion to intervene as a plaintiff in this action.   On the same day, Publix filed a response in opposition to the EEOC's motion to intervene.

On December 21, 1995, Private Plaintiffs filed a reply to Publix's opposition to Private Plaintiffs' motion for class certification.   Private Plaintiffs supported their reply with additional declarations of putative class members; excerpts of deposition testimony from the Class Representatives and from Publix's corporate, regional, district and store-level

managers; documents obtained from Publix during discovery; and
declarations from expert witnesses.

On January 26, 1996, the Court held oral argument on
Private Plaintiffs' motion for class certification. On March
12, 1996, the Court granted Private Plaintiffs' motion. The
Court certified a class (the "Class") comprised of:

> a.  All female management and non-management
>     employees of Publix Super Markets, Inc. who
>     from May 22, 1991 to the date of trial have
>     worked, are working, or will work in Publix's
>     retail operations in Florida and South
>     Carolina.
>
> b.  All female management and non-management
>     employees of Publix Super Markets, Inc. who
>     from October 19, 1991 to the date of trial
>     have worked, are working, or will work in
>     Publix's retail operations in Georgia.
>
> c.  No females who have worked only in Publix's
>     pharmacy operations shall be included in this
>     class.

March 12, 1996 Order (Dkt. 162) at 17-18.

On April 23, 1996, Publix filed a motion seeking
reconsideration of the Court's class certification order or,
alternatively, permission to appeal the ruling to the United
States Court of Appeals for the Eleventh Circuit. The
District Court denied this motion on November 18, 1996. On
November 15, 1996, Publix filed a Petition for a Writ of
Mandamus with the U.S. Court of Appeals for the Eleventh
Circuit seeking appellate review of portions of the class

14

certification decision.   On December 2, 1996, the Eleventh Circuit denied this petition.

On January 31, 1996, the Court granted the EEOC's motion to intervene, with the condition that the EEOC withdraw claims it sought to assert on behalf of applicants for entry-level employment.   On February 6, 1996, the EEOC filed its Amended Intervenor's Complaint.   The EEOC's Amended Intervenor's Complaint alleged that Publix discriminated on the basis of gender against the Class Representatives and similarly situated female associates in Publix's retail operations by placing females into positions which limit employment opportunities, by failing to promote females into craft worker positions, by failing to promote females into managerial positions, by failing to establish uniform guidelines and qualifications for placement, by failing to have a uniform posting procedure, by failing to have written job descriptions, by reliance on subjective criteria, and by failing to preserve employment records as required by law. Publix denies that the Class Representatives or other similarly situated female employees suffered discrimination with respect to initial placement, promotions, compensation, or any other terms or conditions of employment.   Publix also denies that it did not properly maintain records or otherwise failed to comply with Title VII, as alleged by the EEOC.

On January 3, 1996, the parties commenced discovery concerning the merits of Private Plaintiffs' individual and class claims. Discovery included the production of extensive documents from Private Plaintiffs, the EEOC and Publix, production of Publix's computerized personnel data from 1986 to 1996, the production of the EEOC charge investigative file pertaining to promotional issues regarding sex, interrogatories, and depositions of the Class Representatives, numerous putative class members, and a number of Publix's managers. The parties' discovery on merits issues continued through December 1996.

The parties have litigated numerous discovery issues, including but not limited to: (1) the proper temporal scope of discovery; (2) the confidentiality protections applicable to Publix's computerized personnel database; (3) the confidentiality of letters and conversations between the EEOC and Class Counsel; and (4) the discoverability of information concerning sexual harassment complaints asserted by class members other than the Class Representatives. The parties also have litigated the appropriate scope and character of Publix's post-certification communications with class members. On November 25, 1996, the District Court issued an Order on the class communications issues requiring the publication of a Notice and imposing certain restrictions on Publix's

16

communications with members of the Class.     That order was appealed by Publix to the Eleventh Circuit Court of Appeals.

The Private Plaintiffs and the EEOC have vigorously prosecuted this case, and Publix has vigorously contested it. While discovery has not been completed, the parties have taken sufficient discovery to assess reliably the relative merits of the claims of the EEOC, the Private Plaintiffs and the certified Class, and of Publix's defenses.     For example, Private Plaintiffs have taken depositions of six Publix corporate managers, one regional director, four district managers, six store managers, four store department managers, and two other witnesses.     The EEOC has participated in many of these depositions and has also conducted a two-day 30(b)(6) deposition regarding recordkeeping.     Publix has taken multiple days of deposition testimony of each of the Class Representatives, and have deposed 32 of Private Plaintiffs' likely trial witnesses.     The parties have also produced more than 100,000 documents relevant to the issues in this case. Publix has produced computer-readable personnel and other employment-related records for all its associates who worked in its retail stores at any time from 1986 through 1996, as well as thousands of "hard-copy" personnel files.

On June 24, 1996, Private Plaintiffs, the EEOC and Publix began Court-ordered mediation negotiations with the assistance

17

of two experienced mediators:  Peter Grilli of Tampa, Florida and Hunter Hughes of Atlanta, Georgia.  The parties have exchanged statistical and expert analyses, as well as other relevant information, during these mediated negotiations. Under the supervision of the mediators, these negotiations have been conducted at arms-length and without collusion. These efforts resulted in an agreement to settle this action. The terms of the parties' agreement are contained in this Consent Decree.

The parties agree that the formal and informal discovery conducted in this action -- the depositions taken by all sides, the documents produced, the expert witness declarations, and the information exchanged during mediation -- are sufficient to assess reliably the merits of the respective parties' positions and to compromise the issues on a fair and equitable basis.  As indicated by the signature of counsel at the end of this document, the parties have consented to the entry of this Decree.


V.    JURISDICTION

The Court has jurisdiction over the parties and the subject matter of this action.  The Complaints assert claims that, if proven, would authorize the Court to grant the equitable and monetary relief set forth in this Consent Decree

18

(hereinafter "Decree"). **Venue** is proper in this District. This Court shall retain jurisdiction of this action during the duration of the Decree solely for the purpose of entering all orders authorized hereunder which may be necessary to implement the relief provided herein.

VI. <u>EFFECTIVE DATES AND DURATION OF CONSENT DECREE</u>

A. Unless provided otherwise, the equitable provisions in this Decree are effective immediately upon the Approval Date, provided however that in the event that this Decree ultimately does not receive Final Approval, then any prior contempt finding which may have been entered shall be vacated by the Court.

B. Except as otherwise provided herein, the provisions of this Decree and the agreements contained herein shall remain in effect for seven (7) years from the Approval Date.

1. Unless earlier terminated by the Court pursuant to Section VI.B.2., or unless an extension is granted by the Court pursuant to Section VI.B.3., this Decree shall expire without further action by the parties at midnight on the seventh anniversary of the Approval Date.

2. Notwithstanding the foregoing, at any time on or after the fifth anniversary of the Approval Date, Publix may petition the Court to terminate the Decree, and all its

19

provisions, provided that **during** the two (2) years immediately preceding the petition to **terminate** jurisdiction Publix has not: (a) been held by the Court or the Magistrate Judge to have materially violated the Decree (as opposed to isolated incidents of demonstrated non-compliance), which holding has not been vacated or reversed, or (b) failed to use its Best Efforts to achieve the numerical goals for Goal Positions established pursuant to Section XIII.C. of the Decree for which the Goal-Related Geographical Area is Company-wide, as described in Section III.M.  Class Counsel and the EEOC may respond to Publix's petition in accordance with the Local Rules of the Court, and Publix may submit a reply.  Upon review of all the materials submitted by the parties, and a hearing thereon if he or she should so desire, the Court shall grant Publix's petition seeking early termination if the Court is persuaded that Publix has met the standards set forth in this paragraph.

3.   If the Decree has not earlier been terminated pursuant to Section VI.B.1. or VI.B.2., Class Counsel and/or the EEOC may petition the Court to extend the Decree's terms. No extension of this Decree shall be granted unless Class Counsel and/or the EEOC demonstrates that during the final two years of the original seven-year term Publix has materially violated the Decree (as opposed to isolated incidents of

20

demonstrated non-compliance), and such violations are unremedied; in such event, only those terms of the Decree as to which such a showing has been made shall be subject to extension by the Court for such appropriate additional period as may be necessary to secure compliance, but not in any case to exceed two (2) years following the original seven-year duration of the Decree.

4.    The parties hereby consent to the referral of any petition to terminate the Decree or petition to extend the Decree under this Section VI. to the assigned Magistrate Judge for disposition.


VII. SETTLEMENT CLASS

A.    For purposes of the monetary relief provided in this Decree, the Settlement Class is certified pursuant to Federal Rule of Civil Procedure 23(b)(3) and consists of:

1.    All female management and non-management employees of Publix Super Markets, Inc. who have worked at any time on or after May 22, 1991 through the Preliminary Approval Date, in Publix's retail operations in Florida or South Carolina, except those females who have worked only in Publix's pharmacy operations or who have filed a timely request to opt out of the monetary relief provisions of this Decree; and

21

2.    All   female   management   and   non-management
employees of Publix Super Markets, Inc. who have worked at any
time on or after October 19, 1991 through the Preliminary
Approval Date in Publix's retail operations in Georgia or
Alabama, except those females who have worked only in Publix's
pharmacy operations or who have filed a timely request to opt
out of the monetary relief provisions of this Decree.

B.   For purposes of the equitable and declaratory relief
provided in this Decree, the Settlement Class is certified
pursuant to Federal Rule of Civil Procedure 23(b)(2) and
consists of:

1.    All   female   management   and   non-management
employees of Publix Super Markets, Inc. who have worked at any
time on or after May 22, 1991 through the Preliminary Approval
Date, in Publix's retail operations in Florida or South
Carolina, except those females who have worked only in
Publix's pharmacy operations; and

2.    All   female   management   and   non-management
employees of Publix Super Markets, Inc. who have worked at any
time on or after October 19, 1991 through the Preliminary
Approval Date in Publix's retail operations in Georgia or
Alabama, except those females who have worked only in Publix's
pharmacy operations.

22

C.  The Settlement Class closes on the Preliminary Approval Date.  All females hired by Publix into its retail stores after the Preliminary Approval Date may avail themselves of the equitable relief provided in the Decree but shall not be entitled to any portion of the monetary relief provided hereunder.

D.  For purposes of Section VIII. of this Decree, Settlement Class members who have filed a timely request to opt out of the monetary relief provisions of the Decree shall not be held to release any claims for individual relief.

E.  For purposes of Section XV. of this Decree, the Settlement Class does not include those individuals who have filed a timely request to opt out of the monetary relief provisions of this Decree.

F.  In the event that Final Approval of this Decree is not attained, nothing herein shall be deemed to waive Publix's objections and defenses to class certification, and this Decree shall not then be admissible in any court regarding the propriety of class certification or any other issue.

23

VIII.     RELEASE OF CLAIMS

    A.     Release of Claims by Private Plaintiffs and Settlement Class.

        1. Scope of Judicial Release. Upon Final Approval of the Decree, Publix and its directors, officers, managers, agents, employees, attorneys, successors and assigns, and anyone acting in concert with or on behalf of any of them, and their respective pension, profit-sharing, savings and other employee benefit plans of whatsoever nature, and those plans' respective trustees and administrators, shall be fully released and forever discharged from any and all individual and/or class-wide claims, demands, charges, complaints, rights and causes of action of any kind, known or unknown, by the Class Representatives, by Private Plaintiffs, by the Settlement Class, and by each member of the Settlement Class, whether seeking monetary and/or equitable relief of any sort, which arise out of or are related to conduct within the Liability Period constituting alleged gender discrimination in employment under Title VII and/or alleged violations of the recordkeeping requirements with respect to gender promulgated pursuant to Title VII, the Florida CRA, the Florida HRA, and/or any other law prohibiting gender discrimination, whether statutory, pursuant to local ordinance, or at common law, excepting solely claims of Settlement Class members (other than the Class Representatives) for (a) alleged sexual

24

harassment, (b) alleged retaliation for opposing or complaining about purported sexual harassment and/or for participating in a process designed to obtain relief for alleged sexual harassment, or (c) alleged unlawful gender discrimination in not being hired by Publix. This release is final and shall survive the expiration of the Decree's term.

2. <u>Release of Claims by Class Representatives</u>. Upon Final Approval of the Decree, for and in consideration of the mutual promises, terms and conditions by and between the Class Representatives and Defendant set forth herein, the sufficiency of which consideration is expressly acknowledged, the Class Representatives do hereby fully, finally and forever release and discharge Publix, its directors, officers, managers, agents, employees, attorneys, successors and/or assigns, and anyone acting in concert with or on behalf of them, and their respective pension, profit-sharing, savings and other employee benefit plans of whatsoever nature, and those plans' respective trustees and administrators, of and from any and all past and/or present claims, demands, actions, causes of action, suits, damages, liabilities, assessments, judgments, costs, losses, debts, obligations and expenses, of any and every nature whatsoever, whether or not known, allegedly incurred by the Class Representatives because of claimed unlawful gender discrimination or any other allegedly

25

illegal actions by Defendant, including but not limited to those arising in any way out of the alleged facts, circumstances and occurrences underlying those allegations of violations of Title VII, the Florida HRA and the Florida CRA which were asserted or which might have been asserted by or on behalf of the Class Representatives against Defendant either in Private Plaintiffs' original complaint or in any and all subsequent amended complaints in the Shores action, and/or in the Amended Intervenor's Complaint filed by the EEOC and/or in any and all charges of discrimination filed against Publix by some or all of the Class Representatives with the EEOC. This release does not include the workers compensation claims, if any, of the Class Representatives. This release is final and shall survive the expiration of the Decree's term.

B.   Release of Claims by the EEOC.

The negotiation of this Decree has been undertaken by the parties for the purpose of full and complete satisfaction of all claims of the EEOC against Publix concerning alleged gender discrimination in Publix's retail operations (except pharmacy) in violation, inter alia, of Title VII of the Civil Rights Act of 1964, as amended, which pertain to alleged discrimination in regard to job segregation (whether through initial job placement or otherwise) and/or promotion, as well as alleged violations of the recordkeeping requirements with

26

respect to gender promulgated pursuant to Title VII, which the EEOC asserted in its Amended Intervenor's Complaint (Dkt. 143) in this action, but excluding claims for (1) alleged sexual harassment, (2) alleged retaliation for opposing or complaining about purported sexual harassment and/or for participating in a process designed to obtain relief for alleged sexual harassment, or (3) alleged unlawful gender discrimination concerning alleged failure to hire by Publix. Upon Final Approval of the Decree, Publix and its directors, officers, agents, attorneys, employees, and anyone acting in concert with or on behalf of any of them shall be, and, hereby are, fully released and forever discharged from any and all of the above claims, demands, charges, complaints, rights and causes of action of any kind, known or unknown, by the EEOC, the Class Representatives, the Private Plaintiffs, the Settlement Class, and each member of the Settlement Class, which arise out of conduct within the Liability Period constituting alleged gender discrimination in employment under Title VII, excluding claims for (1) alleged sexual harassment, (2) alleged retaliation for opposing or complaining about purported sexual harassment and/or for participating in a process designed to obtain relief for alleged sexual harassment, or (3) alleged unlawful gender discrimination in

27

not being hired by Publix.  This release is final and shall survive the expiration of the Decree's term.

C.   <u>No Tolling of Sexual Harassment Claims</u>.

Any claims of Settlement Class members (other than those of the Class Representatives) for alleged sexual harassment or for alleged retaliation for opposing or complaining about purported sexual harassment and/or for participating in a process designed to obtain relief for alleged sexual harassment are not released hereunder because such claims are not and have never been asserted on a class-wide basis as a part of this lawsuit.  Hence, there also has been no tolling of the statute of limitations for asserting any such claims against Publix by operation of this lawsuit, the EEOC's Commissioner's Charge, or any of the Private Plaintiffs' individual EEOC charges.

D.   <u>No Bar to Future Claims</u>.

Nothing in the Decree shall be construed to bar any claims of members of the Settlement Class, the Class Representatives and the EEOC that arise after the Preliminary Approval Date.

IX.  **MISCELLANEOUS PROVISIONS**

A.   **Calculation of Time**.

In computing any period of time prescribed or allowed by this Decree, unless otherwise stated, such computation or calculation shall be made consistent with Federal Rule of Civil Procedure 6(a) as it exists at the time at issue.

B.   **No Admission of Liability**.

This Decree represents the compromise of disputed claims that the parties recognize would require protracted and costly litigation to determine.  Publix denies that it has engaged in any policy, pattern or practice of unlawful Gender Discrimination, and Publix's entry into this Decree is not, and may not be used by any person as, an admission or evidence that Publix has on any occasion engaged in discriminatory employment practices, such being expressly denied.  Publix has voluntarily entered into this Decree in order to focus on achieving its Mission, and because the actions it has agreed to undertake demonstrate its strong commitment to equal employment opportunity.

C.   **Modification and Severability of the Consent Decree**.

1.   Whenever possible, each provision and term of this Decree shall be interpreted in such a manner as to be valid and enforceable; provided, however, that in the event that after Final Approval hereof any provision or term of this

29

Decree should be determined to be or rendered unenforceable on collateral review, all other provisions and terms of this Decree and the application thereof to all persons and circumstances subject thereto shall remain unaffected to the extent permitted by law. If any application of any provision or term of this Decree to any specific person or circumstance should be determined to be invalid or unenforceable, the application of such provision or term to other persons or circumstances shall remain unaffected to the extent permitted by law.

      2.   Class Counsel, the EEOC and Publix may jointly agree to modify the Decree. In the event that changed circumstances make a modification of the Decree necessary to ensure its purposes are fully effectuated, but good faith negotiations seeking such modification are unsuccessful, any party to the Consent Decree shall have the right to move the Court to modify this Decree. Such motion shall be granted only upon the movant proving to the Court by clear and convincing evidence that changed circumstances make such modification necessary and that the modification will not materially increase the cost to Publix of compliance (out-of-pocket or otherwise), after an opportunity for the other parties to be heard on the motion. Any such modification to this Decree by the Court shall be ordered in such a fashion

that will limit the cost to Publix (out-of-pocket or otherwise) to the extent possible consistent with effectuating the purposes of this Decree. The procedures for negotiations about modifying this Decree (and, if necessary, for resolution of disputes by the Court) shall be the same as those set forth in Section XI. regarding Decree enforcement.

D.   Duty to Support and Defend the Decree.

The Class Representatives, Class Counsel, the EEOC and Publix each agree to abide by all of the terms of this Decree in good faith and to support it fully, and shall use their Best Efforts to defend this Decree from any legal challenge, whether by appeal or collateral attack.


X.   GENERAL EQUITABLE PROVISIONS

A.   General Injunctive Provisions.

For the Term of this Consent Decree,

1.   Publix and its officers, agents and management or supervisory employees shall not engage in any policy, practice or procedure which has the purpose of discriminating against any Class Representative or member of the Settlement Class on the basis of gender.

2.   Publix and its officers, agents and management or supervisory employees shall not engage in or be a party to any act, policy, practice or procedure which discriminates,

31

retaliates, or has the purpose of discriminating or retaliating against any Class Representative, any member of the Settlement Class, any employee of Publix or any other person because he or she furnished information, gave testimony or participated in any respect in the prosecution of this litigation, in the EEOC Commissioner's Charge (Kemp vs. Publix Super Markets, Inc., Case No. 150921508), or in any of the individual charges of Gender Discrimination filed with the EEOC prior to the Preliminary Approval Date by the Class Representatives or members of the Settlement Class, or filed an award request form pursuant to Section XV.

3.    Publix, and its officers, agents and management or supervisory employees shall make available to female employees the same employment opportunities and terms and conditions of employment, including but not limited to assignments to jobs and facilities, compensation, training, education, skills and career development, performance appraisals, and promotions, as Publix affords similarly situated male employees.

4.    Nothing herein should be construed as any finding or admission that Publix previously has failed to act in the manner described in Section X.A.

5.    Associates complaining of alleged violations of the provisions set forth in Section X.A.1.-3. may utilize

Publix's internal complaint procedure or may file charges with the EEOC, or the state or local fair employment practices ("FEP") agency. The parties mutually intend that the enforcement provisions of this Decree shall not be utilized as an alternative method for class members to litigate entitlement to individual relief for claims of alleged Gender Discrimination. Individual complaints of such alleged violations, as distinguished from pattern or practice allegations, shall not be considered to raise an issue of compliance or non-compliance with this Decree, except insofar as the conduct of a Publix officer, manager or supervisor is of the level and nature necessary for the issuance of a contempt citation under Section X.B.

6. As of the Approval Date, and pursuant to the Court's authority under the All Writs Act and the Anti-Injunction Act, 28 U.S.C. §§ 1651, 2283, and Federal Rule of Civil Procedure 23, each and every Class Representative and each and every Settlement Class member who has not filed a timely request to opt out shall be and hereby is permanently enjoined from bringing any claims released pursuant to Section VIII. in any court, agency or adjudicative body, whether federal, state or local.

33

B. <u>Standard for Judicial Enforcement by Contempt</u>.

1.   Class Counsel or the EEOC may petition the Court to hold Publix or its officers, managers or supervisors in contempt, but only after:  (a) having exhausted the dispute resolution procedures set forth in Section XI. without having obtained reasonably effective remedial action, and (b) having, after a reasonable investigation, concluded in good faith that the standards for a contempt citation described below have been met.

a.   Officers, managers or supervisors of Publix shall not be held in contempt unless the United States District Judge finds, by clear and convincing evidence, that either:  (i) there has been an intentional disregard or intentional violation of a term or terms of the Decree by that officer, manager, or supervisor, (ii) such officer, manager, or supervisor had knowledge of such a violation of this Decree committed by one of his or her subordinate managers or supervisors but failed to take reasonably effective remedial action, or (iii) there is an intentional or reckless disregard by such officer, manager or supervisor of the fact that a Publix policy, practice or procedure has an adverse impact on female associates in violation of this Decree and such policy, practice, or procedure is not otherwise lawful under applicable Title VII law; and, as to any of the foregoing,

reasonably effective remedial action has not been taken by Publix.

b.   Publix shall not be held in contempt unless the United States District Judge finds, by clear and convincing evidence, that either (i) there has been an intentional disregard or intentional violation of a term or terms of the Decree by one or more Publix agents at the level of officer or above, or by the Compliance Official, (ii) one or more agents of Publix at the level of officer or above, or the Compliance Official, had knowledge of such a violation of this Decree by an officer, manager or supervisor of Publix but failed to take reasonably effective remedial action, with respect to a matter within his or her area of responsibility, or (iii) there is an intentional or reckless disregard by one or more Publix agents at the level of officer or above, or by the Compliance Official, of the fact that a Publix policy, practice, or procedure has an adverse impact on female associates in violation of this Decree and such policy, practice, or procedure is not otherwise lawful under applicable Title VII law; and, as to any of the foregoing, reasonably effective remedial action has not been taken by Publix.

2.   Third parties shall not have standing to petition the Court to hold Publix or its officers, managers or

35

supervisors in contempt.  **Rather,** any individual concerned about the Company's compliance with this Decree may so notify Class Counsel and/or the EEOC, and request that they fulfill their responsibility to **examine** Publix's compliance and to seek such relief, if any, **as may** be appropriate.

      C.   **Prevention of Sexual Harassment**.

      1.   Publix shall adopt, implement and maintain enforcement procedures for the "Company Policy Statement on Harassment, Including Sexual Harassment," attached as Exhibit B hereto (the "Harassment Policy").  Publix may amend the Harassment Policy from time to time as it may deem necessary, as long as the amended policy has the same substantive import as the Harassment Policy and is reasonably designed to achieve the same effect as the Harassment Policy in meeting the Purposes of the Decree.  Prior to implementing an amended policy, Publix shall provide Class Counsel and the EEOC with notice of its proposed amendment and a statement of the reasons therefor.  Within 20 days, Class Counsel and the EEOC shall notify Publix if they believe that the amended policy is not effective to meet the Purposes of the Decree, the reasons for that belief, and invoke the meet and confer procedures set forth in Section XI.

      2.   The Harassment Policy attached as Exhibit B applies to harassment on bases other than gender; however, the

provisions of Section X.C.1. apply only to the "sexual harassment" provisions of the Harassment Policy.

3.   Associates complaining of alleged sexual harassment may utilize Publix's internal complaint procedures or may file charges with the EEOC or with state or local FEP agencies.   Individual complaints and any related individual retaliation claims shall not be considered to raise an issue of compliance or non-compliance with this Decree.   Only a complaint that Publix, as a matter of policy, practice or procedure, has not adopted or is not implementing or maintaining enforcement procedures for the Harassment Policy regarding complaints of alleged sexual harassment shall raise an issue of compliance or non-compliance with Section X.C.1. of this Decree.   The substantive results of any sexual harassment investigation undertaken by the Company pursuant to the Harassment Policy are outside the scope of this Decree, and shall not be the subject of any enforcement proceeding or reporting obligation hereunder.

D.   <u>Publix's Internal Mechanisms for Monitoring Compliance</u>.

1.   <u>Designation of Compliance Official</u>.

a.   Within two weeks of the Approval Date, Publix shall designate a Compliance Official who shall be charged with overall responsibility for monitoring compliance with the terms of the Decree.   The Compliance Official shall

37

either be the Vice President of Human Resources or another individual who shall report directly to the member of the Executive Committee designated pursuant to Section X.D.2.b.

b.  In the event that the Compliance Official ceases to function in that role, the Company shall designate a replacement Compliance Official as soon as practicable but no later than thirty (30) days after the Compliance Official ceases to function in that role.

c.  The following procedure shall apply in selecting the Compliance Official:

i.  The Company shall use its Best Efforts to appoint an individual who will be effective in carrying out the duties and responsibilities set forth in Section X.D.2.

ii.  Prior to appointing an individual for the Compliance Official position, the Company shall provide Class Counsel and the EEOC with a resume including the identity, background, experience and qualifications of the individual that the Company intends to appoint to the position.  The Company also shall provide Class Counsel and the EEOC with a description of the reasons why it designated this individual.  Within three weeks of receiving the resume and description of the basis for the selection, Class Counsel and the EEOC may interview the designated individual and

38

provide their views as to the individual's qualifications and suitability for the Compliance Official position.

    2.   <u>Duties of the Compliance Official</u>.

The Compliance Official shall use his or her Best Efforts to ensure the Company's implementation of and compliance with the provisions of this Decree.

    a.   For purposes of this Section, Best Efforts shall include the following:

    i.   Monitoring the establishment, implementation, and revision of the goals provided for pursuant to Section XIII.C. of the Decree.

    ii.   Overseeing the development and implementation of all Training and Education programs to be provided pursuant to Section XII. of the Decree.

    iii. Submitting to Class Counsel and the EEOC progress reports and other monitoring and reporting material specified in Section XIV. of the Decree.

    iv.  Ensuring the implementation and monitoring of the Internal Complaint Procedure set forth in Section X.D.3. of the Decree.

    b.   Publix shall designate a member of its Executive Committee to generally supervise the Compliance Official in order to ensure that he or she is fulfilling the

39

duties and responsibilities listed in Section X.D.2. of the Decree.

c.   The Company shall provide such support staff, funds and other resources as may be reasonably necessary to discharge the Company's obligations under the Decree.

d.   The Compliance Official shall have the authority to recommend appropriate relief, including monetary relief, to be awarded to any individual whom the Compliance Official concludes has been the victim of a violation of the Decree or of Gender Discrimination.

3.   <u>Internal Complaint Procedure</u>.

a.   The Company shall internally publicize its Company-wide policy prohibiting Gender Discrimination, either separately or in conjunction with the Company's overall policy prohibiting discrimination.

b.   The policy shall provide that persons engaging in such conduct will be subject to appropriate discipline, up to and including discharge. The policy shall be posted in a prominent place for associates in each employing location covered by this Decree, and shall be described in the summary leaflet provided for in Section XII.A.2.

40

c.   The Company shall maintain an internal complaint procedure for the purpose of resolving "covered complaints."   The phrase "covered complaint" shall mean any complaint by a female associate asserting that: (1) any provision of this Decree has been violated with respect to her employment with the Company, or (2) that she has been the subject of Gender Discrimination.   Consistent with the definition of Gender Discrimination in this Decree, the phrase "covered complaint" shall not include complaints of sexual harassment.   At its election, however, the Company may extend the operation of the internal complaint procedure to other types of complaints, including but not limited to sexual harassment complaints, without broadening its obligations hereunder, which are strictly limited to complaints about Gender Discrimination and compliance with this Decree.   The internal complaint procedure shall not preclude an associate's right to file charges with the EEOC or with state or local FEP agencies.

d.   An associate with a covered complaint shall be encouraged to resolve the dispute informally at a local level, but not in a fashion which is intended to chill the associate's right to file charges with the EEOC or with state or local FEP agencies.

41

e.    The internal complaint procedure will permit an associate to initiate a formal covered complaint by filing a written complaint with the Company's Manager of Equal Employment Opportunity ("MEEO") on a form designed for that purpose.  The Company will make such forms available at each retail location.   In addition, the Company will publicize a toll-free number through which an associate may request and obtain a form for making such a complaint.

f.    Within two weeks of the Approval Date of the Decree, the Company shall designate the Manager of Equal Employment Opportunity in accordance with Section X.D.3.g.   In the event that the MEEO ceases to function in that role during the Term of this Consent Decree, as soon as practicable but no later than thirty (30) days after the date the MEEO ceases to function in that role, the Company shall designate a replacement MEEO pursuant to the procedure set forth in Section X.D.3.g.

g.    The following procedure shall apply in selecting the Manager of Equal Employment Opportunity:

i.    The Company shall use its Best Efforts to appoint an individual who will be effective in carrying out the duties and responsibilities set forth in Section X.D.3.h.-k.

42

ii.  **Prior** to appointing an individual for the MEEO position, the Company shall provide Class Counsel and the EEOC with a resume including the identity, background, experience and qualifications of the individual that the Company intends to appoint to the position.  The Company also shall provide Class Counsel and the EEOC with a description of the reasons why it designated this individual.  Within three weeks of receiving the resume and description of the basis for the selection, Class Counsel and the EEOC may interview the designated individual and provide their views as to the individual's qualifications and suitability for the MEEO position.

h.  Written covered complaints submitted pursuant to Section X.D.3.e. shall be investigated by an associate and/or attorney designated by the MEEO unless sufficient information to do so is not found in the complaint or otherwise reasonably available.  The MEEO shall not designate any associate to investigate a complaint if that particular associate is the subject of the complaint.  The associate(s) making the complaint shall be advised in writing of the findings of the investigation.

i.  Any associate who has submitted a written covered complaint who is not satisfied with the initial resolution of that complaint may file a written request that

43

the matter be reviewed by the MEEO (or his/her designee). The associate requesting such a review shall be advised in writing of the outcome of the review within seven (7) days of the review's completion.

j.   This Decree does not provide for time limits during which associates must file formal written covered complaints, or during which associates must request review of initial resolutions. Should experience with this procedure cause Publix to conclude it would be appropriate to impose such time limits, Publix shall have the right in its sole discretion to impose such time limits, but such time limits as may be imposed shall not be less than forty-five (45) days for the filing of a covered complaint, measured from the time of the action or incident giving rise to the complaint, or fourteen (14) days for the filing of a request for review, measured from the date of the written notice of initial findings.

k.   The MEEO (or a designee under his/her supervision) shall, for all written covered complaints during the duration of the Decree, retain copies of:   the written covered complaint, the written statement of the findings of the investigation, and, when utilized, the written request for review and the written statement of the outcome of the review by the MEEO or his/her designee. Upon Class Counsel's or the

44

EEOC's written request, in the context of a dispute regarding compliance with the Decree's express provisions pursuant to the dispute resolution procedures set forth in Section XI., the Company shall provide Class Counsel or the EEOC, respectively, with a copy of the written covered complaint raising the alleged issue of non-compliance, the written statement of the findings of the investigation regarding that complaint, and, when utilized, the written request for review and the written statement of the outcome of the review by the MEEO or his/her designee.    Such documents shall be kept confidential by Class Counsel and/or the EEOC, respectively, and shall not be provided by them to any person or entity not a party to this Consent Decree.

1.    The internal complaint procedure established in this Section is not intended to supplant the right of any associate to file a charge or complaint of discrimination or retaliation under any available municipal, state, or federal law, and shall not be interpreted to alter any applicable time limitations for the filing of any such charge or complaint.

4.    <u>Disciplinary Policy</u>.

a.    The Company's published policies shall include the following elements:

45

i.   A   statement   that   gender discrimination   in   hiring,   job   assignment,   promotion, compensation   or   benefits,   discharge,   or   other   employment decisions is unacceptable.

ii.   A statement that it is unacceptable to   retaliate   against   an   associate   for   using   the   internal complaint   procedure   established   herein,   or   for   otherwise opposing Gender Discrimination.

iii. A   statement   that   such   alleged conduct,   if   substantiated,   will   result   in   appropriate discipline, up to and including discharge.

E.   **Communication of Consent Decree Requirements and EEO Practices to Officers and Associates**.

1.   No   later   than   thirty   (30)   days   after   the Approval Date of this Consent Decree, Publix shall provide to each of its officers and associates a copy of the Notice and Summary of Consent Decree, which is attached hereto as Exhibit C, explaining the Company's duties and obligations under the Decree.   During the Term of this Consent Decree, the Notice and Summary shall be disseminated to newly hired associates within fifteen (15) days of the date of hire.

2.   Within thirty (30) days of the Approval Date, Publix shall post a copy of the Notice to Employees, which is attached as Exhibit D, on the associate bulletin board at each Publix retail store location and shall post the notice in a

46

prominent location at its Corporate Human Resources Office. At its election, and after notice to Class Counsel and the EEOC, Publix may modify Exhibit D so that it is applicable to other statutorily protected characteristics, including race, color, religion, national origin, age and disability. Publix also shall post and maintain the General Notice to Employees (EEOC poster), as required by law, on the associate bulletin board at each Publix retail store location and shall post the notice in a prominent location at its Corporate Human Resources Office.

3.   Within four weeks after January 1, 1998, and at six-month intervals thereafter throughout the Term of this Consent Decree, the Compliance Official shall certify to the EEOC and Class Counsel that he or she has used Best Efforts to maintain the posting of Exhibit D and the General Notice to Employees as required under Section X.E.2.


XI.   DISPUTE RESOLUTION PROCEDURES

A.   Unless otherwise directed by the United States District Judge, or provided by the Decree, the assigned United States Magistrate Judge for the Middle District of Florida, Tampa Division, shall have authority to resolve all disputes arising under the Decree, subject to the various limitations on enforcement, and to the pertinent enforcement standards, as

set forth in this Decree (**solely** by way of example, and not limitation, see Section X.A.5. and X.C.3.).

B.   At the request of the EEOC, Class Counsel or Publix, the EEOC and/or Class Counsel and Publix shall confer as necessary, and the parties shall use their Best Efforts to resolve promptly any differences or any disputes regarding the interpretation or implementation of the Consent Decree, including Publix's compliance with the Decree.

C.   The EEOC, Class Counsel or Publix shall have the right to file a motion with the Court to resolve any dispute or issue of compliance regarding any provisions of the Decree, subject to the same enforcement limitations and standards referenced in Section XI.A.   The parties hereby consent to referral of said motions to the assigned Magistrate Judge for disposition.   The procedure for resolution of such issues shall be as follows:

1.   If the EEOC, Class Counsel or Publix has good reason to believe that a legitimate dispute exists, the initiating party or parties shall promptly give written notice to the other party or parties, including: (a) a reference to all specific provisions of the Decree that are involved; (b) a statement of the issue; (c) a statement of the remedial action sought by the initiating party; and (d) a brief statement of

48

the specific facts, circumstances and any other arguments supporting the position of the initiating party;

2. Within twenty (20) days after receiving such notice, the non-initiating party or parties shall respond in writing to the statement of facts and argument set forth in the notice and shall each provide its written position, including the facts and arguments upon which each relies in support of its position;

3. The EEOC, Class Counsel and Publix shall undertake good-faith negotiations, which should include a meeting by telephone or in person and the exchange of relevant documents and/or other information, to attempt to resolve the areas of dispute or alleged non-compliance;

4. The Magistrate Judge, upon motion, may permit either the EEOC, Class Counsel or Publix to take discovery as provided by the Federal Rules of Civil Procedure, but only as to demonstrably relevant documents and/or witnesses, if the Magistrate Judge determines that the informal exchange of documents or information has not been sufficient to allow either the EEOC, Class Counsel or Publix to present the dispute upon a factual record adequate for the determination required hereunder;

5. If good-faith efforts to resolve the matter have failed, and after written notice of "impasse" to the non-

initiating party or parties, the EEOC, Class Counsel or Publix may file a motion with the Court, with a supporting brief, requesting resolution of the dispute or the issue of non-compliance, provided, however, that such motion shall be limited to the dispute(s) and/or issues(s) as to which the "meet and confer" provisions of Section XI.C.1-3. have been exhausted;

6.    The non-moving party or parties will have fifteen (15) days to respond to any such motion; and

7.    The Court shall attempt within fifteen (15) days after filing of the final brief to resolve the dispute and may schedule a hearing or other proceeding, which any party may attend telephonically unless otherwise ordered by the Court, to resolve the matter.

D.    The provisions of this Section do not prevent Class Counsel, the EEOC or Publix from promptly bringing an issue before the United States District Judge when exigent facts and circumstances require immediate Court action to prevent a serious violation of the terms of this Decree, which otherwise would be without meaningful remedy.  The moving papers shall explain the facts and circumstances that allegedly necessitate immediate action by the United States District Judge.  If any such matter is brought before the United States District Judge requesting immediate Court action, the opposing party or

parties shall be provided with appropriate actual notice, and an opportunity to be heard in opposition to the motion, pursuant to the Local Rules of the Court and the Federal Rules of Civil Procedure. The Court in its discretion may set such procedures for emergency consideration as are appropriate to the particular facts and circumstances, but no such matter may be conducted on an <u>ex</u> <u>parte</u> basis.

XII. <u>TRAINING AND EDUCATION</u>

    A.   <u>Development of Videotape, Leaflet and Announcement</u>.

      1.  <u>Orientation Videotape</u>. Within three (3) months after the Approval Date, or by October 1, 1997, whichever is later, and throughout the Term of this Consent Decree, the Company shall make available an orientation videotape of an expected duration of not more than 15 minutes which generally summarizes, and a more detailed set of written and/or videotape materials which more specifically describes: (a) each employment position in the Company retail store operations through Regional Director; (b) the minimum qualifications and prerequisites for each position; (c) the normal promotional paths for each position; (d) the Registration of Interest process; (e) the general pay levels, typical scheduling and overtime requirements, and the availability of and general basis upon which bonuses are paid

51

for each position; (f) the training and other assistance available to help individuals qualify for advancement; (g) opportunities to transfer to other positions or stores after initial assignment; (h) the commitment of the Company to encourage advancement of female associates; (i) the Company's policy prohibiting harassment, including sexual harassment; and (j) a general description of the significant terms of the Decree.  The orientation videotape shall include footage of women working in such jobs as grocery clerk, meat cutter, baker and store manager.  Copies of the orientation videotape shall be available for review by all incumbent associates and by all applicants for any retail store position at their request.  The availability of the orientation videotape, summary leaflet (see Section XII.A.2.) and more detailed materials will be stated on the pre-hire videotape shown to applicants before they complete the portion of the Company employment application that requires applicants to identify the positions for which they are applying.  Interested associates may review the orientation videotape (on video replay equipment provided by the Company at its retail stores), summary leaflet and/or the more detailed materials during non-paid, non-working hours on a reasonable basis. Class Counsel and the EEOC shall have the opportunity to

review the script for the orientation tape not less than 30 days prior to Publix's use thereof.

2. <u>Summary Leaflet</u>. Within three (3) months after the Approval Date, or by October 1, 1997, whichever is later, the Company shall develop a brief leaflet (with an expected length of not more than 2,000 words) summarizing the content of the videotape referred to in Section XII.A.1., and the more detailed materials, and the availability thereof for review. In addition, the leaflet will summarize the non-monetary aspects of the Decree that are not addressed in the videotape referred to in Section XII.A.1., and will refer associates to other videotapes and written materials that describe career opportunities at Publix. Class Counsel and the EEOC shall have the opportunity to review the text of the summary leaflet prior to its use by Publix.

3. A copy of the summary leaflet shall be posted and maintained at each Publix retail store in a location readily accessible to associates and interested applicants, and included in the "new hire" packet during the Term of this Consent Decree. When the summary leaflet is initially published, each incumbent associate in the Company's retail stores shall be given a copy. Interested associates and applicants may review the leaflet on a reasonable basis during non-paid, non-working hours.

4.   A reference to the summary leaflet and orientation videotape, a summary of their contents, and advice about where associates can obtain copies of the leaflet or view the videotape shall be printed in <u>Publix News</u> not less than three times per year, in roughly four-month increments, throughout the duration of the Decree.

B.   <u>Training of Division and Regional Management</u>.

If Publix has not already done so prior to the Approval Date, then not later than three months after the Approval Date of the Decree, and thereafter at least once each subsequent calendar year during the Term of this Consent Decree, one or more meetings shall be conducted for Divisional Vice Presidents and Regional Directors to review Publix's plan for compliance with the terms of the Decree.

C.   <u>Training of District Managers and Store Managers</u>.

1.   If Publix has not already done so prior to the Approval Date, then not later than three months after the Approval Date, and thereafter at least once each subsequent calendar year during the Term of this Consent Decree, each District Manager and Store Manager in the Company's retail store operations shall attend a meeting (or one in a series of meetings) scheduled and conducted by the Regional Director and/or a representative of the Compliance Official to review Publix's plan for compliance with the terms of the Decree.   At

54

these meetings, the following topics shall be reviewed and discussed: (a) compliance with the Decree; (b) equal employment opportunity and affirmative action for women; (c) federal, state and Company prohibitions of workplace sexual harassment and retaliation; and (d) other topics that will encourage equal employment opportunity as well as affirmative action in recruiting, hiring, qualifying, training, promoting and retaining females. The first such meeting shall involve not less than two hours. Meetings in subsequent calendar years shall involve not less than one hour. Attendance at such meetings by each District Manager and Store Manager shall be mandatory. Such meetings may be in conjunction with other Company business, at the Company's discretion, and may be organized geographically in such fashion as the Company deems appropriate.

D. <u>Additional Training of Assistant Store Managers, Department Managers and Department Assistant Managers</u>.

1. During the Term of this Consent Decree, Assistant Store Managers, Department Managers and Department Assistant Managers in the Company's retail store operations shall receive training on equal employment opportunity, to include the following topics: (a) compliance with the Decree; (b) equal employment opportunity and affirmative action for women; (c) federal, state and Company prohibitions of

55

workplace sexual harassment and retaliation; and (d) other topics that will encourage equal employment as well as affirmative action in recruiting, hiring, qualifying, training, promoting and retaining females. Such training may be delivered in live "discussion" format, video format, written materials, or any combination of these or other formats, provided, however, that such training that occurs within the first twelve months following the Approval Date shall not be provided to participants solely through written materials. No less than two hours shall be devoted to the training on these topics, for each participant, within twelve months following (a) the Approval Date, or (b) the date of the participant's promotion to a management position, whichever occurs later. In addition, in each two-year period beginning January 1, 1999, the Company shall schedule at least two hours of training on such subjects, and participation will be mandatory for each Assistant Store Manager and Department Manager in the Company's retail store operations at the time such training is provided.

2.   The training described in Section XII.D.1. may be held in conjunction with other Company business, at the Company's discretion, and may be organized geographically in such fashion as the Company deems appropriate.

56

3.    For  purposes  of  this  Section,  the  term
"Department  Manager"  shall  include  specifically  the  Meat
Manager,  Bakery  Manager,  Produce  Manager,  Deli  Manager  and  the
Manager(s)  of  such  other  departments  as  from  time  to  time  may
come  to  exist  in  the  stores.    The  term  "Department  Assistant
Manager"  shall  include  specifically  the  Assistant  Meat
Manager,  Assistant  Bakery  Manager,  Assistant  Produce  Manager,
Assistant  Deli  Manager,  and  the  Assistant  Manager(s)  of  such
other  departments  as  from  time  to  time  may  come  to  exist  in
the  stores.    The  terms  "Department  Manager"  and  "Department
Assistant  Manager"  specifically  shall  not  include  the  Pharmacy
Manager  and  Assistant  Pharmacy  Manager,  respectively.

E.    <u>Training of Human Resources Personnel</u>.

Unless  it  has  already  done  so  prior  to  the  Approval  Date,
within  ninety  (90)  days  following  the  Approval  Date,  or  by
October  1,  1997,  whichever  is  later,  Publix  will  develop  and
implement  a  training  program  for  its  Human  Resources  staff
associates  who  have  substantive  responsibilities  related  to
compliance  with  fair  employment  practice  laws  and/or  the
application  of  consistency  and  objectivity  in  the  placement
and  promotion  process.    New  Human  Resources  staff  with  such
responsibilities  shall  receive  such  training  within  sixty  (60)
days  of  their  date  of  entry  into  such  position.    Such  training
shall  include,  but  not  be  limited  to:  (1)  Federal  and  State

57

equal employment opportunity laws, including but not limited to the general provisions of these laws, the bases on which discrimination is prohibited under these laws, the identity, roles and responsibilities of agencies established to enforce these laws, and the principles and objectives underlying these laws (including but not limited to job relatedness); (2) the application of equal employment opportunity to typical employment situations, including but not limited to the development and completion of employee performances appraisals, making selection and promotion decisions, provision of work assignments, training and other career advancement opportunities, setting salaries and general supervision of associates without engaging in either Gender Discrimination or gender stereotyping; (3) review of the provisions and requirements of the Decree; (4) review of the internal complaint procedure; (5) the role and responsibility of the Human Resources Department and staff; and (6) supervisory follow-ups of EEO complaints, including but not limited to, prohibition against retaliation, working with the complainant and discipline of and other remedial measures to be taken with the offender.

58

XIII.     JOB SELECTION PROCEDURES

    A.     Registration of Interest for Selecting Retail Store Management and Non-Management Positions.

        1.     Standard for Establishing a Registration of Interest Program.

           a.     On or before July 15, 1997, or within ten days after the Approval Date, whichever is later, Publix shall have implemented a Registration of Interest ("ROI") system, as described generally in Section XIII.A.2.-3., throughout the retail store operations of the entire Company.

           b.     The purposes of the ROI system include the following: (i) to improve the information available to Publix's operations management in making promotion and associate development decisions; (ii) to provide a systematic Company-wide method, consistent with equal employment opportunity, for Publix associates to make informed and documented decisions about their career preferences; (iii) to provide a systematic Company-wide framework, consistent with equal employment opportunity, within which Publix will incorporate such associate preferences into its retail store promotion and associate development decisions; and (iv) to establish a meaningful basis for setting goals pursuant to Section XIII.C.

2.  <u>ROI for Management Positions</u>.

a.   All **management** positions (except pharmacy) currently existing in Publix's retail stores shall be included in an ROI system.   These positions currently include: Store Manager, Assistant Store Manager, Second Assistant Manager, Meat Manager, Assistant **Meat** Manager, Produce Manager, Assistant Produce Manager, Deli Manager, Assistant Deli Manager, Bakery Manager, and Assistant Bakery Manager.   Any other retail management positions adopted by the Company for general use (as opposed to limited pilot programs) shall be added to and included in the ROI system.

b.   Within ten days after the Approval Date or by July 15, 1997, whichever is later, Publix shall begin implementing a system for creating semi-annual "candidate pools" (from which groups of Eligible Associates will be determined) for each non-pharmacy management position in each Region of Publix's retail stores.   In its discretion, Publix can include a system reasonably limiting associates' choice of Regions as a part of the ROI system.

c.   The Management ROI system may ascertain interest in all covered management positions simultaneously, or may stagger the ascertaining of interest in the covered management positions by ascertaining interest in some of the covered management positions in one "cycle," and interest in

60

other covered management positions in other cycles.  In either case, within six months of the Approval Date, or by January 15, 1998, whichever is later, Publix shall have initiated any and all such cycles, so that each covered management position will have been the subject of a Registration of Interest no later than six months from the Approval Date, or by January 15, 1998, whichever is later.  Publix will repeat the Registration of Interest at six-month intervals thereafter, except as variances may be necessary to alter the aforementioned cycles, and thereby shall include each covered management position in a Registration of Interest within each six-month period, according to its cycle.

d.   If Publix has not previously done so, Publix shall publish a notification in the Publix News no later than four weeks after the Approval Date describing the Management ROI system and the time of its anticipated introduction.

e.   In addition, for each Management ROI cycle, Publix shall post a notice in each retail store that states that ROI forms will be distributed to all full-time associates in that store within the following two weeks.  The notice shall inform associates that, in order to be considered for a retail management position during an upcoming six-month period, the associate will be required to complete and submit

61

an ROI form by a date certain, which will be within four weeks of the date that the notice is posted. Associates shall be given at least two weeks notice before being required to complete and submit an ROI form in order to be considered Eligible Associates. The notice shall identify and refer associates to the information available in each store which states the Minimum Qualifications for each retail management position. The notice shall describe the procedure that will be used to select associates for promotion from those associates who register their interest. The notice shall also state that all associates who return completed ROI forms and meet the Minimum Qualifications will be placed in the pool of Eligible Associates in the Region(s) for each retail store management position in which the associate registers interest (unless limited pursuant to XIII.A.2.b.), and that Publix intends to fill all retail management position openings in the Region during the upcoming six-month period from the Eligible Associate pools so formed for that Region.

     f.   Within two weeks of each posting of the notice in the stores described in Section XIII.A.2.e., Publix shall make available to the full-time retail store associates Management ROI forms for registering interest in management positions. The Management ROI form shall state that in order to be considered for promotion to the subject retail

management position(s) during the following six-month period, the associate must return the form to Publix within two weeks of the date the Management ROI forms were made available to the full-time retail store associates. The Management ROI form and/or accompanying documents may contain accurate and fair statements regarding the duties and responsibilities of the subject management positions, and other suitable instructions, accompanied by information regarding the appropriate place to find a full description of the duties, qualifications and responsibilities of the positions. The Management ROI form shall request only the following information:

i.   biographical information, such as the associate's name, address, store location, current position, time in current position, and Social Security number;

ii.  the management positions, if any, for promotion to which the associate wishes to be considered during the ensuing six months as they become open;

iii. whether the associate believes that he or she presently meets the Minimum Qualifications for the particular retail management position(s) for which he or she is registering interest, as is required to validly participate in the Registration of Interest for the upcoming six-month selection period;

63

iv. **any** geographical limitations and/or preferences, noted separately, regarding the Regions in which, or location of the stores in which, the associate wishes to be considered for a promotion;

v. **signature** and date; and

vi. **other** information agreed to by Publix, Class Counsel and the EEOC or approved by the Court upon Publix's application.

g. An associate who requests a copy of his or her Management ROI form will be provided such a copy.

h. Within three weeks after Publix receives completed ROI forms, Publix shall post in each store a notice which lists the names of the associates who submitted timely ROI forms for each management position in that Region. Publix shall post such a notice during each ROI cycle.

i. All **vacancies** that occur within the six-month period following the publication of the registrant lists shall be filled with candidates from within the appropriate Eligible Associate pools, giving consideration to the Minimum Qualifications and Selection Standards referenced in Section XIII.B., and the Goals described in Section XIII.C., respectively. (Provided, however, that it is anticipated by the parties that unusual circumstances occasionally may arise which warrant promotion of qualified

associates from outside the relevant Eligible Associate pools; as long as such exceptions are infrequent and do not cause an adverse impact on females, then such exceptions shall not constitute non-compliance with this Decree.)

j.   Approximately eight to twelve weeks prior to the end of the six-month selection period, Publix shall again publish the notice referenced in Section XIII.A.2.e., with the additional requirements that the notice: (i) inform all associates that, even though they previously completed Management ROI forms, they will be required to complete new Management ROI forms for the upcoming six-month period in order to continue to be considered for promotion to covered management positions, and (ii) shall contain a list of all associates who were selected for promotion to covered management positions in the Region during the preceding six-month period and the stores to which those associates were promoted.   Publix shall endeavor to publish this notice as much in advance of the end of the six-month selection period as is feasible.   The ROI procedures contained in Section XIII shall be repeated at six-month intervals thereafter.

k.   Publix may propose alternative schedules and approaches with respect to the Management ROI procedures set forth herein which are consistent with achievement of the substantive purposes described in Section XIII.A.1.b., if

65

deemed operationally preferable.   For example, Publix may propose to stagger the various locations' ROI registration schedule (meaning, for example, that all of Publix's Regions may not have the same ROI schedule).   If Publix proposes to make such changes to the procedures set forth in this Decree for the ROI system, it shall provide Class Counsel and the EEOC with written notification of the proposed changes and the basis for proposing such changes.   Class Counsel and the EEOC shall have thirty (30) days to provide written notice identifying the substance of and reasons for any objections to Publix's proposed changes and thereby commence the meet and confer and enforcement process set forth in Section XI.   If neither Class Counsel nor the EEOC provides such written notice of objections and reasons within the thirty-day period, then such changes will be deemed acceptable to the parties, and Publix may immediately implement the changes without being deemed to be in non-compliance with the Decree.

1.   Substantive changes to the Management ROI system set forth herein (e.g., determining that the ROI system is not feasible for certain management positions, or that the registration interval should be greater than six months) would constitute modifications invoking the procedures set forth in Section IX.C. if the EEOC and/or Class Counsel consider such

changes to be at variance from the purposes set forth in Section XIII.A.1.b.

m.    Nothing herein shall preclude Publix from making administrative changes to the details of the Management ROI system (e.g., the manner in which ROI forms are printed or the use of separate ROI forms for different management positions), without notice to Class Counsel or the EEOC, as long as such changes are not at variance with the ROI procedures specifically set forth in this Decree or the purposes set forth in Section XIII.A.1.b.

3.    ROI for Non-Management Positions.

a.    By not later than six months following the Approval Date, the non-management Goal Positions (as defined in Section III.L.) not included as a part of the ROI system for Management positions described above shall be included in a Non-Management ROI system.    These positions currently include Grocery Clerk, Dairy Clerk and Frozen Food Clerk; Produce Clerk; Meat Cutter; Meat Cutter Apprentice; Baker; and Baker Apprentice.

b.    Under this Non-Management ROI system, there will be an opportunity no less frequently than once every six months for each full-time and part-time associate then employed to register his or her interest in moving to a non-management Goal Position.

67

c.    If **Publix** has not previously done so, Publix shall publish a notification in the <u>Publix News</u> no later than four weeks after the Approval Date describing the Non-Management ROI system and the time of its anticipated introduction.

d.    In addition, for each Non-Management ROI cycle, Publix shall post a notice in each retail store that states that ROI forms will be available to all part-time and full-time associates within the following two weeks.  The notice shall inform associates that, in order to register their interest in being considered for a move into a non-management Goal Position during the upcoming six-month period, the associate will be required to complete and submit an ROI form by a date certain, which will be within four weeks of the date that the notice is posted.  Associates must be given at least two weeks notice before being required to complete and submit an ROI form.   The notice shall identify and refer associates to the information available in each store which states the Minimum Qualifications for each retail position.

e.    Within two weeks of each posting of the notice in the stores described in Section XIII.A.3.d., Publix shall make available to all full-time and part-time retail store associates Non-Management ROI forms for registering interest in non-management Goal Positions.  The Non-Management

68

ROI form shall state that in order to register interest in movement to a non-management Goal Position during the following six-month period, associates must return the forms to Publix within two weeks of the date the Non-Management ROI forms were made available to full-time and part-time associates.

f.    It is the parties' intent that the Non-Management ROI system will be the primary mechanism whereby incumbent associates become candidates for selection to non-management Goal Positions.  However, nothing in this Decree shall be construed to require Publix to limit the placement of individuals in non-management Goal Positions to those associates who have registered their interest pursuant to this Section, or to associates from the store where the vacancy occurs.

g.    The Non-Management ROI form shall state that associates interested in being considered for a move to the subject retail non-management position(s) from another job classification during the following six-month period should return the form to Publix within two weeks of the date the Non-Management ROI forms were made available to full-time and part-time associates.  The Non-Management ROI form and/or accompanying documents may contain accurate and fair statements regarding the duties and responsibilities of the

69

subject non-management positions, and other suitable instructions, accompanied by information about the appropriate place to find a full description of the duties, qualifications and responsibilities of the positions.

       h.   An associate who requests a copy of his or her Non-Management ROI form will be provided such a copy.

       i.   Nothing herein shall preclude Publix from making changes to the Non-Management ROI system, as long as such changes are not at variance with the purposes set forth in Section XIII.A.1.b.

    B.  <u>Selection Standards and Minimum Qualifications</u>.

       1.   Publix will retain the right, under this Decree, to maintain its existing Selection Standards and Minimum Qualifications for all positions, and to develop and implement new Selection Standards and Minimum Qualifications, subject only to the limitations stated in Section XIII. of the Decree.

       2.   If Publix's use of any Minimum Qualification currently maintained or implemented in the future for any Goal Position is determined to have an adverse impact on female associates, Publix shall discontinue the use of such Minimum Qualification, or modify it to eliminate the adverse impact, unless, under applicable law, Publix believes it can establish

70

that the Minimum Qualification is job related for the job position in question and consistent with business necessity.

3.   If Publix plans to use or plans to continue using for a Goal Position a Minimum Qualification that has been determined to have caused an adverse impact on females, Publix shall notify Class Counsel and the EEOC of its validation evidence or any other justification supporting the use of the Minimum Qualification. If Class Counsel, the EEOC and Publix do not agree that Publix's use of the Minimum Qualification is in accordance with applicable law, then any party may initiate the dispute resolution procedures set forth in Section XI., and, if necessary, request that the Court resolve the dispute pursuant to the procedures set forth in Section XI. Any decision by the Magistrate Judge under this Section may be appealed to the District Judge for review de novo.

4.   The current Minimum Qualifications for each of the Goal Positions are listed in Exhibit A. No change of a Minimum Qualification may be made without prior notification to Class Counsel and the EEOC.

5.   Publix shall not increase the length of any job service requirement that is set forth as a Minimum Qualification on Exhibit A unless Publix first provides to Class Counsel and the EEOC its validation evidence or other

71

justification which Publix contends establishes that such requirement is job-related for the position in question and is consistent with business necessity. If Class Counsel, the EEOC and Publix do not agree that Publix's intended use of the increased job service requirement is in accordance with applicable law, then any party may initiate the dispute resolution procedures set forth in Section XI., and, if necessary, request that the Court resolve the dispute pursuant to the procedures set forth in Section XI. Publix agrees that it will not increase the relevant job service Minimum Qualification(s) set forth on Exhibit A pending resolution of any such dispute, provided that the dispute is resolved within 90 days of the date that Publix responds to Plaintiffs' or the EEOC's notice as provided in Section XI.C.1.

6.     Whether a Minimum Qualification will be considered to cause an adverse impact will be determined pursuant to applicable Title VII law and the following principles:

a.     Adverse impact of any Minimum Qualification used on a Company-wide basis will be assessed on a Company-wide basis.

b.     Adverse impact assessments regarding all Minimum Qualifications will be made no less frequently than annually; however, any adverse impact assessment may calculate

72

the cumulative impact of a **Minimum** Qualification over a longer reasonable period of time.

c.   For **purposes** of calculating adverse impact of a Minimum Qualification **for** a Goal Position, the relevant available pool will consist of all associates who timely registered interest in the position and have not been earlier screened out based on the application of an earlier-applied Minimum Qualification.

7.   The parties agree that any minimum age qualification maintained to **meet** the requirements of federal, state, or local law, **shall be** presumed to be job related and consistent with business necessity, and hence not to be a violation of this Decree.

C.   **Goals**.

1.   **General Principles**.

a.   **Publix** shall use its Best Efforts to meet the selection goals set forth in this section.  These goals do not establish maximum rates for the selection of females, rather these goals establish selection rates that Publix shall use its Best Efforts to achieve.

b.   In attempting to meet these goals, Publix shall not be required to select unqualified persons or to displace any associate from his or her position.  These goals are not quotas; they are goals designed to afford guidance as

73

to whether Publix is making selection decisions in such a way as to afford equal employment opportunity.

c.   Failure to achieve a target by a fraction of a person shall not be deemed to constitute a failure to achieve a goal under the Decree.

d.   Publix's failure to achieve a goal for a particular period will not be considered a violation of this Decree unless Publix has failed to use its Best Efforts to meet the goal.   Should Publix demonstrate that (i) the proportion of good faith offers made to females as compared to males was at least as high as the goal percentage, or (ii) significant differences in the relative length of experience or qualifications of males and females in the pool explain the failure to achieve the goal (provided that such length of experience or qualifications standard is job-related for the job position in question and consistent with business necessity), such evidence will conclusively establish that Best Efforts were used.   Nothing in Section XIII.C.1.d. shall be interpreted to imply that Best Efforts could not also be shown by other appropriate evidence.   When citing to evidence of offers made but rejected, an associate who more than once rejects an offered Goal Position within the six-month selection period will be counted in the same fashion, whether male or female.

74

e.   If   Publix   establishes   a   new   job
classification in the retail stores, Publix shall so inform
Class Counsel and the EEOC.  Class Counsel or the EEOC shall
inform Publix if they believe that this new position should be
included among the Goal Positions.  For example, Class Counsel
or the EEOC may assert that the new position should be treated
as   a   Goal   Position   if   the   new   position   covers   job
responsibilities presently performed by associates working in
one or more jobs included among the current Goal Positions.
If the parties do not agree as to whether the new job position
should be included as a Goal Position, then the dispute shall
be resolved pursuant to the procedures set forth in Section
XI.

    2.   <u>Goal Positions in Retail Stores</u>.

          a.   Goals shall be established for the retail
store positions defined as "Goal Positions" in Section III.

          b.   The goals for each Goal Position shall be
established every six months, upon completion of the semi-
annual Registration of Interest process and related screening
for Minimum Qualifications for each such position.  Publix
will calculate the goals pursuant to the procedures set forth
in this Section, and shall distribute a list of those goals,
along with the underlying calculations, to Class Counsel and
the EEOC within thirty (30) days following the close of the

75

registration and screening process for that particular position. (The screening process will be considered closed when the pools of Eligible Associates have been determined.)

c.  Goals will be expressed as a percentage of the moves from other job classifications into Goal Positions that occur within the six-month period covered by the ROI cycle.

d.  Calculation: The goal percentage for each Goal Position shall be determined by dividing (i) the total number of female Eligible Associates in the Goal-Related Geographical Area for such position by (ii) the total number of Eligible Associates in the Goal-Related Geographical Area for such position.  Goals will be stated as percentages, rounded up to the nearest whole number (e.g., 17.2% would be rounded up to 18%).  For each Goal Position, in assessing achievement of the goal at the conclusion of the measurement period, the actual number of females moved into the Goal Position from other job classifications will be compared to the target number, calculated by multiplying the pertinent goal percentage by the number of moves into the pertinent Goal Position from other job classifications in the Goal-Related Geographical Area during the measurement period.  Targets will be calculated to one decimal place, rounded up to the nearest one-tenth.

76

Example:

The Goal-Related Geographical Area for the Store Manager position covers all of Publix's retail stores. If, throughout the Company, 110 associates registered their interest for Store Manager positions and were determined Eligible, and if 31 of those Eligible Associates were female, then the goal for Store Manager would be 28.2 percent, which would then be rounded up to 29 percent. Therefore, for the six-month period following the completion of this semi-annual ROI and screening process, Publix would use its Best Efforts to select females for 29 percent of the promotions from Assistant Store Manager to vacancies in the Store Manager position. If, at the conclusion of the six-month period there had been 14 moves to Store Manager positions from other job classifications, then the target would be to have filled 4.1 of those Store Manager openings with female associates.

        3.    **Above-Store-Level Positions**.

During the Term of this Consent Decree, Publix shall use its Best Efforts to promote qualified females into the positions of District Manager and Regional Director, consistent with its commitment to promotion from within.

        D.  **Evaluation Programs**.

        1.   On at least an annual basis, the Compliance Official shall have a detailed in-person discussion with each

Regional Director and the Vice President for that Region's Division, reviewing with that Regional Director and the Vice President the performance of the Region, and of each District within the Region, regarding compliance with this Decree.

2.    Also on at least an annual basis, each Regional Director shall have a detailed in-person discussion with each District Manager in the Region, reviewing with that District Manager the performance of the District regarding compliance with this Decree.

3.    Following completion of the meetings with the District Managers required under Section XIII.D.2., the Regional Directors shall certify to the Compliance Official that the required discussions were held.

4.    Prior to any individual's promotion to a retail District Manager, Regional Director or Division Vice President position, the Company shall consider the individual's performance with respect to meeting the Company's obligations under the Decree.

5.    Publix will establish an award, to be designated the "President's Award," to be awarded annually to a District Manager in each division who, in the judgment of Publix, has demonstrated success in the following areas:

a.    meeting **equal** opportunity goals, described in Section XIII.C., in the stores under his or her supervision;

b.    maintaining a working environment which is free from discrimination and which values diversity; and

c.    demonstrating dedication to the dignity, value, and employment security of associates.

XIV. <u>REPORTING AND RECORDKEEPING</u>

A.    <u>Documents to Be Preserved for the Duration of the Decree</u>.

Publix shall retain the following employment-related records for the duration of the Decree or as required by state or federal law, whichever is longer:

1.    A computer readable database or databases containing computerized personnel information for the time period covered by the Decree.   The personnel information contained in the database or databases shall be equivalent to the computerized personnel information that was provided to Private Plaintiffs during the litigation of this case.

2.    A computer readable database or databases of the results of all ROI forms distributed and received by the Company, which includes the dates such forms were distributed to associates, the date by which associates were required to return the ROI forms, and the names, Social Security numbers,

79

and all computer readable information contained on the completed and timely returned ROI form.

3. Personnel-related documents (or scanned copies or other computer-based storage thereof) of persons hired, including part-time and full-time applications; performance evaluations; discipline, counseling, and discharge records; all declined offers of promotion for Goal Positions; and job status change forms.

4. All formal internal complaints regarding alleged violations of this Decree, or of Gender Discrimination filed pursuant to Section X.D.3., the written findings of the investigation and, when utilized, the written request for review and the written statement of the outcome of the review by the MEEO or his/her designee.

5. Nothing in this Decree shall be interpreted to relieve Publix of any recordkeeping requirements otherwise imposed by applicable law.

B. <u>Documents to Be Maintained for Two Years</u>.

The following documents shall be maintained for two years from the date the document is created, or as required by state or federal law, whichever is longer:

1. All completed ROI forms separated according to the Store in which the associate completed the ROI form.

80

2.   All documents expressly required to be created by the terms of this Decree for which a longer time period is not specified.

C.   **Access to Documents**.

1.   Class Counsel and the EEOC shall, upon reasonable notice, be entitled to review all documents required to be maintained or created by the express terms of this Decree, except, however, that Class Counsel and the EEOC shall not be entitled to review any such documents that are protected by attorney-client or work product privilege.

2.   All documents required to be maintained by the express terms of the Decree are and shall be treated as confidential business records.   In light of Class Counsel's and EEOC's continuing role in the administration of this Decree, in which Class Counsel and EEOC will be provided access to such documents on a confidential basis in order to investigate and resolve potential non-compliance with the Decree, neither Class Counsel nor EEOC shall divulge any such documents to any third party unless so ordered by the Court after notice to Publix and an opportunity for Publix to object to such disclosure and be heard.   Upon expiration of this Decree, EEOC and Class Counsel shall promptly return to Publix any and all documents Publix furnished under this Decree.

81

D.   <u>Reporting Schedule</u>.

Within four weeks after January 1, 1998, and at six-month intervals thereafter throughout the Term of this Consent Decree, Publix shall provide Progress Reports to Class Counsel and the EEOC on the Company's compliance with the Decree's requirements.

E.   <u>Contents of the Semi-Annual Progress Reports</u>.

The Semi-Annual Progress Reports described in Section XIV.D., shall include the following information:

1.   A description of any revisions to the Minimum Qualifications set forth in Exhibit A that are implemented during the reporting period (even though reported separately prior to any revision).

2.   A description of any revisions made to the Management ROI system pursuant to Section XIII. A.2.k.-l. and any revisions made to the Non-Management ROI system pursuant to Section XIII.A.3.i., except those of an administrative nature (see, e.g., Section XIII.A.2.m.) (even though reported separately prior to any revision).

3.   A description of any revisions to any retail store job descriptions that are implemented during the reporting period, including, but not limited to, the addition of any new job classifications (even though reported separately).

82

4. A description of any revisions to the pay scales or bonus systems for retail store-based positions that are implemented during the reporting period.

5. A description of any revisions to the Policy Prohibiting Harassment, Including Sexual Harassment, attached as Exhibit B, that are implemented during the reporting period (even though reported separately prior to any revision being implemented).

6. A chart or charts displaying the number and percentage of male and female associates who registered their interest for each position covered by the ROI system during the reporting period; and of those associates who registered their interest, the number and percentage of male and female associates who met the screen for Minimum Qualifications for each position. This information shall be reported on a Company-wide as well as a Region-wide basis.

7. A chart or charts displaying the number and percentage of male and female associates who were promoted or otherwise moved from another job classification to any Goal Position during the semi-annual ROI cycles concluded within the reporting period; and the goal and target for each position, and the numerical difference between each target and the number of females promoted or moved. This information

83

shall be reported on a Company-wide or Region-wide basis, as applicable.

8. A chart or charts displaying the number and percentages of male and female associates employed on a full-time or part-time basis, separately for each, in each job classification in Publix's retail stores on the last day of the reporting period (i.e., approximately June 30 or December 31 of each year). This information shall be reported separately by job classification and on a Company-wide as well as Region-wide basis.

9. A chart or charts displaying the number and percentages of males and females employed in the positions of District Manager, Merchandiser, and Regional Director on the last day of the reporting period. This information shall be reported separately by job classification on a Company-wide basis.

10. Lists of all individuals selected for management Goal Positions from outside the relevant Eligible Associate pools as provided in Section XIII.A.2.i.

11. A description of the implementation and delivery of the training and education required by Section XII., and lists of those in attendance.

12. Copies of all training materials used by the Company during the reporting period to train managers and HR

84

staff associates regarding equal employment opportunity and/or compliance with this Decree, pursuant to Section XII.B.-E.

13. An organizational chart or charts, which lists by name and gender all associates at the District Manager level or above, including, but not limited to District Managers, Regional Directors, Vice Presidents, and President or Chief Executive Officer, who have responsibilities for or supervision over associates in the retail stores, and the identity of the stores, districts, regions, and divisions within their supervision or responsibility, as of the last day of the reporting period.

14. An organizational chart or charts, which lists all Human Resource staff associates who have substantive responsibilities related to compliance with this Decree or fair employment practice laws and which displays the Human Resources Department's reporting and supervisory structure.

15. Certification by the Compliance Official that he or she has used Best Efforts to see that the Notice and Summary of Consent Decree as described in Section X.E.1. has been provided to associates as required by the Decree.

16. Certification by the Compliance Official that he or she has used Best Efforts to see that the summary leaflet described in Section XII.A.2. has been and remains posted.

85

17. Certification by the Compliance Official that he or she has used Best Efforts to see that Exhibit D (Notice to Employees) and the EEOC General Notice to Employees described in Section X.E.2. have been and remain posted.

18. A summary of the formal internal complaints received during the reporting period alleging violations of this Decree and/or Gender Discrimination. This summary shall be kept confidential and shall not be provided to any person or entity not a party to this Consent Decree. This summary shall include:

a. a designation regarding whether the complaint was one of a violation of the Decree, or of Gender Discrimination, or both;

b. the name, job classification, store number and Social Security number of the complainant(s);

c. the name of the investigator designated for the complaint;

d. the results of the investigation undertaken in response to such complaint, including the remedial and/or disciplinary measures imposed, if any, and the name of the manager(s) or other associate(s) disciplined; and

e. whether any internal appeal was filed and the disposition of the appeal.

F.   <u>Addresses for Reporting</u>.

1.   All reports and documents that Publix is required to deliver or serve on the EEOC shall be mailed to: Equal Employment Opportunity Commission, 1 Biscayne Tower, 2 South Biscayne Boulevard, Suite 2700, Miami, Florida 33131, Attention Eve G. Lowe, Acting Regional Attorney.

2.   All reports and documents that Publix is required to deliver or serve on Class Counsel shall be mailed to Barry Goldstein, Saperstein, Goldstein, Demchak & Baller, 1300 Clay Street, 11th Floor, Oakland, California 94612 and to Thomas A. Warren, Thomas A. Warren Law Offices, P.O. Box 1657, Tallahassee, Florida 32302.

XV.   <u>MONETARY AWARDS PROCEDURE</u>

A.   <u>Monetary Awards to Class Members</u>.

Publix agrees to distribute in monetary awards to class members a total of sixty-three million five hundred thousand dollars ($63,500,000), minus the total opt-out credits, if any, pursuant to Section XV.K. (hereinafter this net amount shall be called "the Total Class Award"). Distributions from the Total Class Award shall be utilized to provide individual monetary awards to members of the Settlement Class in accordance with the provisions of this Section.

B.   **Allocation of Total Class Award to Individual Monetary Awards.**

1.   The Total Class Award shall be used for the purposes set forth in Section XV.A., except as provided in Section XV.J.

2.   The Total Class Award shall be allocated for payments of individual monetary awards to members of the Settlement Class as set forth in Section XV.C. and XV.D.; provided, however, that, before allocating any portion of the Total Class Award to payments under Section XV.C. or XV.D., the Total Class Award first shall be adjusted as set forth in Section XV.E.1.a.-d.

3.   Publix shall be responsible for producing, mailing and distributing to eligible Settlement Class members the checks containing their individual monetary awards within twenty-one (21) days following: (a) receipt by Publix of a final list approved by the Awards Arbitrator setting forth the amount that should be paid to each Settlement Class member, (b) the Final Approval Date, or (c) the final determination of the total Opt-Out Credit pursuant to Section XV.K., whichever is later. All such checks shall contain above the endorsement line thereon the language set forth in Exhibit E, and no Settlement Class member shall alter or attempt to strike that language yet still be entitled to the individual monetary award hereunder.

88

C.   **Eligibility for Individual Monetary Awards and Award Value**.

Settlement Class members' eligibility for receipt of individual monetary awards from the Total Class Award shall be determined in accordance with this Section and Section XV.D. The amount of the Total Class Award to be allocated for qualified Type 2 awards ("the Total Type 2 Award") shall be the amount of the Total Class Award remaining after first subtracting from the Total Class Award the total amount to be allocated for Type 1 awards pursuant to this Section XV.C. and the amounts specified in Section XV.D.1. and XV.E.1.

1.   **Type 1 Awards**.

a.   Payments to be distributed pursuant to Section XV.C.1. shall be referred to as "Type 1 awards."

b.   All Settlement Class members who meet either or both of the categories listed in this Section XV.C.1.b. shall be eligible to receive a Type 1 award:

i.   all Settlement Class members who were employed in Publix's retail stores on the Preliminary Approval Date and who successfully completed their 90-day probationary period no later than 90 days after the Preliminary Approval Date (such associates will be eligible to receive an automatic Type 1 award payment without taking further action); or

ii.   all other Settlement Class members who had completed their 90-day probationary period on or

89

before the Preliminary Approval Date and who file a valid Statement Requesting a Type 2 Award pursuant to this Section.

    c.   Each eligible Settlement Class member's Type 1 award payment shall be based strictly upon her length of service with Publix in its retail stores from January 1, 1986 through the Preliminary Approval Date, according to the following graduated scale:

| Length of Service | Amount |
|---|---|
| Less than 90 days (but completed her probationary period no later than 90 days after the Preliminary Approval Date) | $ 70 |
| 90 days to 1 year | $140 |
| 1 year +1 day to 2 years | $210 |
| 2 years +1 day to 3 years | $280 |
| 3 years +1 day to 4 years | $350 |
| 4 years +1 day to 5 years | $420 |
| 5 years +1 day to 6 years | $490 |
| 6 years +1 day to 7 years | $560 |
| 7 years +1 day to 8 years | $630 |
| 8 years +1 day to 9 years | $700 |
| 9 years +1 day to 10 years | $770 |
| 10+ years | $840 |

    d.   Each Settlement Class member who is eligible to file a Statement Requesting a Type 2 Award, as

described below, may file **such** a statement without affecting her entitlement to a Type 1 award.

    2.   **Type 2 Awards**.

    a.   Each **member** of the Settlement Class, who during her Publix employment had completed her 90-day probationary period on or **before** the Preliminary Approval Date, may file a signed and **sworn** Statement Requesting a Type 2 Award.  To be considered a "Qualified Class Member" who is entitled to receive a **Type** 2 award, a member of the Settlement Class must have:

    i.   Returned a completed Statement Requesting Award in the **form** attached as Exhibit 5 to the Stipulation and Order preliminarily approving this Decree, postmarked no later than the final date established by the Court for submitting such statements (April 28, 1997); and

    ii.   Stated under oath that she:

    (a) is a member of the Settlement Class; and

    (b) meets the following standard: she wanted to advance further in her career with Publix than she has, in one of the nine ways set forth on the Statement Requesting Award form, or did not advance as quickly as she believed appropriate, and does not feel confident that such

91

lack of advancement was wholly caused by factors other than her gender.

b.   Qualified Class Members shall receive Type 2 award payments from the Total Class Award, based upon the formula set forth in Section XV.D.

D.   <u>Qualified Class Members' Type 2 Awards</u>.

1.   Each member of the Settlement Class who has asserted her claims in the form of sworn declarations submitted to the Court by Class Counsel, or in the Amended Complaint filed by the Private Plaintiffs, shall be entitled to a liquidated minimum monetary award based on her length of service, as set forth in Exhibit F.   Any such eligible Settlement Class member shall receive payment of her individual liquidated minimum monetary award, as well as any award amounts due her pursuant to Section XV.E., on or before the date fifteen (15) days following the Final Approval Date or November 15, 1997, whichever is later.   To the extent, if any, such eligible Settlement Class member's individual monetary award allocated under Section XV.C. and XV.D.2.-3. combined exceeds her liquidated minimum award, then the difference will be paid to her in a supplemental award distributed pursuant to Section XV.B.3.

2.   Each Qualified Class Member shall be entitled to a weighted <u>pro rata</u> share of the portion of the Total Class

92

Award allocated for Type 2 awards based on her total "weighted estimated weeks of service" with Publix between her initial date of hire and December 31, 1996.

3.   The Type 2 award amount that will be allocated to each Qualified Class Member will be determined by the following formula:

a.   The number of "estimated weeks of service" the Qualified Class Member worked during each calendar year from the Qualified Class Member's initial date of hire until December 31, 1996 shall be calculated by using the information available on Publix's 1986 through 1996 year-end computer employment history tapes, as follows:

i.   The "estimated weeks of service" the Qualified Class Member worked during each calendar year from January 1, 1986 until December 31, 1996 shall be obtained from Publix's 1986 through 1996 year-end computer employment history tapes (or if not contained therein, from supplemental computer tapes to be supplied by Publix).

ii.   For each Qualified Class Member who was employed in Publix retail stores prior to January 1, 1986, the "estimated weeks of service" the Qualified Class Member worked during each calendar year prior to January 1, 1986 will be determined by multiplying the number of calendar years during which the Qualified Class Member was employed prior to January

93

1, 1986 by the "average estimated weeks of service" for the calendar years the Qualified Class Member worked between January 1, 1986 and December 31, 1996.  The "average estimated weeks of service" the Qualified Class Member worked between January 1, 1986 and December 31, 1996 will be calculated by totaling the number of "estimated weeks of service" in each calendar year the Qualified Class Member worked between January 1, 1986 and December 31, 1996 and dividing this total number of "estimated weeks of service" by the number of calendar years in which the Qualified Class Member worked at Publix between January 1, 1986 and December 31, 1996.

b.   Each Qualified Class Member's total number of "weighted estimated weeks of service" in each calendar year shall be calculated by multiplying the "estimated weeks of service" the Qualified Class Member worked during each calendar year from the Qualified Class Member's initial date of hire until December 31, 1996 by the Weighting Factors designated below:

| Calendar Year | Weighting Factor Per Estimated Weeks of Service |
| --- | --- |
| Pre-1986 | 1 |
| 1986 | 1 |
| 1987 | 1 |
| 1988 | 1 |
| 1989 | 1 |

94

| | |
|---|---|
| 1990 | 2 |
| 1991 | 2 |
| 1992 | 2 |
| 1993 | 2 |
| 1994 | 2 |
| 1995 | 2 |
| 1996 | 1 |

c. The sum of each year of "weighted estimated weeks of service" shall be the Qualified Class Member's "total weighted estimated weeks of service";

d. All Qualified Class Members' total weighted estimated weeks of service shall be added together;

e. This sum will be divided into the value of the Total Type 2 Award;

f. The result of this calculation shall determine the value of each "weighted estimated week of service";

g. Each Qualified Class Member's total "weighted estimated weeks of service" will be multiplied by the value of a "weighted estimated week of service" in order to determine the gross value of the Qualified Class Member's Type 2 award.

E.   **Other Allocations**.

1.  Prior to allocating any portion of the Total Class Award to payments under Section XV.C. or XV.D., the Total Class Award shall be reduced by the following amounts:

a.  The amount of twenty-nine thousand five hundred eighty-five dollars ($29,585) multiplied by the number of Class Representatives who do not opt out of the Settlement Class for individual relief purposes shall be allocated to the Class Representatives' pool established pursuant to Section XV.E.2., as awards in consideration for each such Class Representative releasing fully any and all individual claims she may have against Publix through the Approval Date, except for worker's compensation claims, as set forth in Section VIII.A.2., over and above the Settlement Class members' release of all claims of Gender Discrimination.  The valid execution of such release, in the form attached as Exhibit G, shall be a condition precedent to any Class Representative receiving any monetary award under this Decree.

b.  The amount of three thousand dollars ($3,000) shall be paid to each Settlement Class member who was deposed in this action, excepting Settlement Class members who were deposed pursuant to Federal Rule of Civil Procedure 30(b)(6), for each day or partial day of deposition testimony

given, regardless of the substance of her testimony or the party by whom her deposition was taken.

c. The amount of twenty thousand five hundred dollars ($20,500) multiplied by the number of Class Representatives who do not opt out of the Settlement Class for individual relief purposes shall be allocated to the Class Representatives' pool established pursuant to Section XV.E.2., as awards in consideration for their having assumed the risks and potential liability related to being named plaintiffs in this class action litigation, including the potential liability for Defendant's taxable legal costs had Defendant litigated the action to a favorable judgment.

d. The amount of seventeen thousand six hundred twenty-five dollars ($17,625) multiplied by the number of Class Representatives who do not opt out of the Settlement Class for individual relief purposes shall be allocated to the Class Representatives' pool established pursuant to Section XV.E.2., as awards in consideration for their having expended substantial time and effort related to this class action litigation.

2. All of the award amounts that any of the Class Representatives are due to receive or be allocated from the Total Class Award pursuant to any Section of this Decree shall be pooled and divided equally among those of the Class

97

Representatives who do not opt out of the Settlement Class for individual relief purposes.   No award amounts shall be allocated to this Class Representatives' pool with respect to any Class Representative who opts out of the Settlement Class for individual relief purposes.

F.   **Recipients' Responsibilities**.

It shall be the sole responsibility of each member of the Settlement Class who seeks a monetary award to advise Class Counsel promptly of her change of address.   A Class Member's failure to keep Class Counsel apprised of her address may result in her request for an award being denied.

G.   **Awards Arbitrator**.

1.   Within thirty (30) days after the Approval Date, Class Counsel shall select an Awards Arbitrator to be approved by the United States District Judge.   The Awards Arbitrator shall resolve all disputes arising under this Section, unless otherwise provided herein, and shall also perform all other duties and responsibilities assigned to the Awards Arbitrator in this Section.

2.   All determinations of the Awards Arbitrator are final, binding, and non-appealable.

3.   In the event that the Awards Arbitrator resigns or is otherwise unable to perform his or her duties under the

Decree, Class Counsel shall select a new Awards Arbitrator, subject to approval by the United States District Judge.

H.   Procedure for Review of Award Requests.

To ensure the appropriate and equitable distribution of the Total Class Award to members of the Settlement Class, the following procedure shall be utilized:

1.   An Awards Escrow Agent shall be used to assist in the awards request and evaluation process.   The Awards Escrow Agent shall be Claims Settlement Administrators, Inc., Post Office Box 49020, Jacksonville Beach, Florida 32240-9020. Class Counsel shall draft and file with the United States District Court instructions setting forth the duties and responsibilities of the Awards Escrow Agent.

2.   The Awards Escrow Agent shall be responsible for receiving all award request forms and shall provide Class Counsel with copies of all request forms filed.   After receiving the request forms, Class Counsel shall initially review the request forms along with Publix's computer employment history records to determine:

a.   Which Settlement Class members are qualified to receive Type 1 awards;

b.   The amount of each Type 1 award;

99

c. Which Settlement Class members requested and are qualified to receive a Type 2 award from the portion of the Total Class Award allocated for Type 2 awards; and

d. The estimated amount of each Type 2 award.

3. As part of the initial review of the award request forms, Class Counsel may request supporting information and documents from any Settlement Class member who has filed a Statement Requesting Award, to assess her eligibility for an award. The Settlement Class member shall respond to Class Counsel's request for additional information by mailing the documents or statement containing the requested information postmarked no later than thirty (30) days after the Settlement Class member's receipt of Class Counsel's request. A Settlement Class member's failure to respond to

     c. Which Settlement Class members requested and are qualified to receive a Type 2 award from the portion of the Total Class Award allocated for Type 2 awards; and

     d. The estimated amount of each Type 2 award.

     3. As part of the initial review of the award request forms, Class Counsel may request supporting information and documents from any Settlement Class member who has filed a Statement Requesting Award, to assess her eligibility for an award. The Settlement Class member shall respond to Class Counsel's request for additional information by mailing the documents or statement containing the requested information postmarked no later than thirty (30) days after the Settlement Class member's receipt of Class Counsel's request. A Settlement Class member's failure to respond to Class Counsel's request for additional information by mailing the documents or statement postmarked within forty-five (45) days of the date that Class Counsel mailed the request to her shall result in her request for award being denied.

     4. If Class Counsel determines that a Settlement Class member is not qualified to receive a Type 2 award, Class Counsel shall send to the Settlement Class member a notice that states the reason for that determination. This notice shall also inform the Settlement Class member of her right to challenge such determination before the Awards Arbitrator.

Any Settlement Class member wishing to file such a challenge must do so by stating in writing the reason she believes that Class Counsel's determination is incorrect, and by mailing that written statement to the Awards Escrow Agent postmarked no later than thirty (30) days after the Settlement Class member's receipt of the notice.   Any Settlement Class member whose written challenge is not received by the Awards Escrow Agent within forty-five (45) days of the date that Class Counsel mailed notice to her shall not be permitted to challenge Class Counsel's determination that the Settlement Class member is not qualified to receive an award.

5.   If Class Counsel determines that a Settlement Class member is qualified to receive a Type 2 award, Class Counsel shall send to the Settlement Class member a notice that states the estimated gross value of her Type 2 award and informs her that she has the right to challenge such value determination before the Awards Arbitrator.   The only basis Settlement Class members may assert for challenging the estimated gross value of their awards shall be that Class Counsel incorrectly calculated either or both of the formulas contained in Section XV.C.1.c. or XV.D.3. in determining the value of her award.   Any Settlement Class member who wishes to file such a challenge must do so by stating in writing the reason she believes that Class Counsel incorrectly applied the

101

formula or formulas to her request, and by mailing that written statement to the Awards Escrow Agent postmarked no later than thirty (30) days after the Settlement Class member's receipt of the notice. Any Settlement Class member whose written challenge is not received by the Awards Escrow Agent within forty-five (45) days of the date that Class Counsel mailed notice to her shall not be permitted to challenge Class Counsel's determination of the value of the Settlement Class member's Type 2 awards.

6. Challenges filed with the Awards Escrow Agent pursuant to Section XV.H.4.-5. shall be immediately forwarded to Class Counsel for review, and either resolution or submission to the Awards Arbitrator.

7. The Awards Arbitrator shall attempt to resolve expeditiously each challenge within thirty (30) days of the date that the challenge is filed. The Awards Arbitrator shall provide a notice of his or her decision to the Settlement Class member who filed the challenge.

8. After the Awards Arbitrator has resolved all Settlement Class members' timely challenges, Class Counsel shall present to the Awards Arbitrator for approval the final list of Settlement Class members entitled to Type 1 and/or Type 2 awards and the gross dollar value of each such Settlement Class member's Type 1 and/or Type 2 awards. After

102

consulting with Class Counsel, the Awards Arbitrator shall promptly determine whether the procedures contained in this Section of the Decree were followed and then approve the final list for distribution. Publix shall assist the Awards Arbitrator in making this determination, if the Awards Arbitrator so requests. The Awards Arbitrator shall send the final list to Publix in order that Publix may distribute the individual monetary awards to Settlement Class members as provided in Section XV.B.

I.   <u>Allocation of Monetary Awards</u>.

All distributions of individual monetary awards to the Settlement Class members who are entitled to receive Type 1 and/or Type 2 awards shall be allocated by Publix between compensatory damages, back pay and front pay, and prejudgment interest, in respective proportions as warranted by the facts and the law. Before distribution, the Company shall calculate and withhold from each Settlement Class member's total gross award the amount due for federal, state and local income taxes and the amount due for the employee's share of F.I.C.A. on the back pay and front pay portion of the distribution. The Company shall also determine the employer's share of F.I.C.A., F.U.T.A. and S.U.T.A. and be responsible for making those payments, which, unlike the Settlement Class members' share of these withholding taxes, will not be deducted from the Total

103

Class Award.   The Company shall also be responsible for producing and distributing to each Settlement Class member who receives a monetary award her respective W-2 and 1099 tax reporting forms and shall also make the respective tax reporting to the IRS or other appropriate agency.

J.   Distribution of Uncashed Awards.

Any portion of the Total Class Award which is not received by Settlement Class members due to the failure of those Settlement Class members to cash their award checks within six (6) months of the date on the check shall be distributed to United Way of Central Florida.   United Way of Central Florida shall develop a list of individual charities located in the geographic areas where the Company has stores. The individual charities receiving these funds shall have dedicated programs beneficial to females, including but not limited to job training, education or health services for females.   Class Counsel shall select from that list the individual charities to receive such distribution monies.

K.   Opt-Out Credits.

1.   In the event that any member of the Settlement Class elects to "opt-out" pursuant to the procedures established by the Court in its Order preliminarily approving the Decree, and within twelve (12) months of the Approval Date such Settlement Class member timely files a civil action in

104

any court alleging a claim of Gender Discrimination for acts occurring during the Liability Period, or timely files with a state or local FEP agency a charge of Gender Discrimination for acts occurring during the Liability Period, the amount of the Total Class Award to be distributed by Publix shall be decreased by an amount as set forth below ("the Opt-Out Credit"). Within thirty (30) days of service of the complaint in such a civil action or receipt of a notice of such a charge of Gender Discrimination, but not later than twelve and one-half (12½) months after the Approval Date, Publix shall notify Class Counsel of the identities of all persons who have timely opted out of the Decree and timely filed such a civil action or charge of Gender Discrimination within twelve months of the Approval Date, the identity of their attorney(s), and the courts or agencies in which such persons have filed civil actions or charges. Any dispute with respect to Opt-Out Credits shall be resolved in accordance with the Dispute Resolution Procedures set forth in Section XI. of this Decree.

2. Within fourteen (14) days of the Approval Date, the EEOC shall send to each Settlement Class member who timely opts out a Notice of Right to Sue based upon the EEOC Commissioner's Charge filed against Publix on March 22, 1992, and upon any individual charge of Gender Discrimination that the Settlement Class Member may have filed.

105

3.   Publix shall **receive** no Opt-Out credit for:

a.   any Settlement Class member who fails to file a timely request for exclusion in a manner that the Court holds to have satisfied the requirements of the Court's Order preliminarily approving this Decree; and

b.   any Settlement Class member who, as of the Preliminary Approval Date, has commenced any civil action against Publix or any of its directors, officers, agents or employees in any federal, state or local court alleging a violation of federal, state or local law prohibiting Gender Discrimination.

4.   Publix shall **receive** an Opt-Out Credit of one hundred fifty thousand dollars ($150,000) for each Settlement Class member who opts out and timely files a civil action or charge of Gender Discrimination as set forth in Section XV.K.1. **and**

a.   who was identified in Plaintiffs' Fourteenth Request for Production of Documents;

b.   who has signed a declaration which was submitted to the Court by Class Counsel in this civil action;

c.   who has had charges alleging Gender Discrimination filed with the EEOC by Class Counsel, unless Class Counsel withdrew their representation prior to December 1, 1996; or

106

d.  who is a **Class** Representative.

5.  Publix shall receive an Opt-Out Credit of twenty thousand dollars ($20,000) for each Settlement Class member who opts out and files a civil action or charge of Gender Discrimination as set forth in Section XV.K.1. and who does not meet any of the four categories set forth in Section XV.K.4.

6.  At any time prior to twelve and one-half (12½) months after the Approval Date, Class Counsel may notify Publix that for purposes of Opt-out Credits all potential Settlement Class members who have timely opted out but who have not already filed a civil action or charge which satisfies the conditions of Section XV.K.1. should be presumed to have filed such a timely civil action or charge of Gender Discrimination.  If Class Counsel make this election, Publix shall identify separately the Opt-Out Credits attributed to those potential Settlement Class members who thereby are presumed to have filed such a timely civil action or charge of Gender Discrimination (hereinafter a "Presumptive Opt-Out"), and the "final determination of the total Opt-Out Credit" condition contained in Section XV.B.3.c. will be deemed satisfied.  If such a Presumptive Opt-Out subsequently files a civil action or charge which satisfies the conditions of Section XV.K.1., then Publix may use the Opt-Out Credit

107

attributed to that Presumptive Opt-Out, along with all other Opt-Out Credits to which Publix otherwise is entitled, to defend, settle or pay any judgment related to a civil action or charge, which satisfies the conditions of Section XV.K.1. Any Opt-Out Credits that are not used by Publix as set forth above and any Opt-Out Credits that were attributed, at Class Counsel's election, to Presumptive Opt-Outs who never filed a civil action or charge which satisfies the conditions of Section XV.K.1. shall be paid to United Way of Central Florida, pursuant to the terms set forth in Section XV.J.

7.   The cumulative total amount of the Opt-Out Credits shall not exceed four million dollars ($4,000,000), and the total amount of Opt-Out Credits pursuant to Section XV.K.4. shall not exceed three million dollars ($3,000,000).

L.   Costs.

Publix shall pay the following costs associated with the administration and distribution of the Total Class Award:

1.   the fees and expenses of the Awards Escrow Agent;

2.   the fees and expenses of the Awards Arbitrator;

3.   the costs of producing and mailing and otherwise distributing the checks containing the individual monetary awards to Settlement Class members; and

108

4. the calculation and submission of all necessary employment and withholding taxes and documentation to appropriate government agencies, and the distribution of all pertinent tax withholding and 1099 forms to each Settlement Class member, as provided in Section XV.I., provided, however, that individual Settlement Class members at all times remain fully responsible for ensuring the appropriate payment of employment and income taxes on their individual monetary awards hereunder.

XVI.      ATTORNEYS' FEES, COSTS AND EXPENSES

A. Basis for Award of Fees, Costs and Expenses.

1. The parties have agreed that it is appropriate as part of the settlement underlying this Consent Decree for Publix to pay to Class Counsel, on behalf of the Class Representatives and the Settlement Class, reasonable attorneys' fees, litigation expenses, and costs in this case.

2. The Company has agreed to pay Class Counsel an award of reasonable attorneys' fees, litigation expenses, and costs in the amount of fifteen million five hundred thousand dollars ($15,500,000) for work performed and costs and expenses incurred through and including the Approval Date. Included in this amount is approximately one million three hundred thousand ($1,300,000) for litigation costs and

109

expenses incurred by Class Counsel. This amount fully satisfies any arguable obligation the Company may have to pay attorneys' fees, litigation expenses, and costs for and on behalf of the Private Plaintiffs and the Settlement Class for any and all work performed and costs and expenses incurred through and including the Approval Date.

3. The Company also has agreed to pay Class Counsel an award of reasonable attorneys' fees, litigation expenses, and costs for work required to be performed by Class Counsel after the Approval Date pursuant to this Decree. The Company agrees that Class Counsel shall be paid such attorneys' fees, expenses and costs in the amount of two million five hundred thousand dollars ($2,500,000), for work performed and costs and expenses incurred after the Approval Date relating to monitoring, administration and implementation (including, without limitation, for processing of all Statements Requesting Awards under Section XV.), attempting to directly contact by telephone persons who have filed Gender Discrimination charges with the EEOC in order to fully inform such persons about their rights under this Decree, and defense of the Decree. Except as provided in Section XVI.A.4., this amount satisfies any arguable obligation the Company may have to pay attorneys' fees, expenses and costs to Class Counsel for any and all work performed and costs and expenses incurred

110

after the Approval Date of the Decree for the monitoring, administration, implementation and defense of the Decree.

4. In addition to the foregoing amounts, Publix agrees that in the event Publix or any of its officers, managers or supervisors is held in contempt pursuant to Section X.B., Class Counsel shall be paid their reasonable costs, expenses and attorneys' fees for the enforcement proceedings resulting in the contempt holding, as though Private Plaintiffs then were a prevailing party in Title VII litigation.

5. Nothing herein shall be interpreted to preclude Publix from seeking attorneys' fees, expenses and costs incurred in litigating enforcement matters according to Title VII law applicable to a prevailing defendant.

B. **Payment of Award**.

1. Within fourteen (14) days following the Approval Date, the Company shall pay to Class Counsel one half (½) of the fifteen million five hundred dollars ($15,500,000), or seven million seven hundred fifty dollars ($7,750,000), for litigation-related attorneys' fees, expenses and costs as set forth in Section XVI.A.2. Publix shall pay Class Counsel the remaining seven million seven hundred fifty dollars ($7,750,000) within fourteen (14) days following the Final Approval Date. In the event that Final Approval of the Decree

111

is not attained, Class Counsel shall return to Publix the initial payment of seven million seven hundred fifty dollars ($7,750,000) within 15 days after the non-approval of the Decree becomes final.

      2.  The attorneys' fees, expenses and costs awarded and agreed to be paid by the Company pursuant to Section XVI.A.3. shall be paid according to the following schedule:

| | |
|---|---|
| 30 days after Approval Date | $650,000 |
| January 15, 1998 | $900,000 |
| January 15, 1999 | $300,000 |
| January 15, 2000 | $250,000 |
| January 15, 2001 | $150,000 |
| January 15, 2002 | $125,000 |
| January 15, 2003 | $ 62,500 |
| January 15, 2004 | $ 62,500 |

If the Decree is terminated prior to seven (7) years after the Approval Date pursuant to Section VI., Publix shall pay to Class Counsel all attorneys' fees listed above that are unpaid as of the date the Decree is terminated.  Such payment shall be made no later than fourteen (14) days after the date the Decree is terminated.

      IT IS SO ORDERED, ADJUDGED AND DECREED this 23rd day of May, 1997.

HENRY LEE ADAMS, JR.
U.S. District Judge
Middle District of Florida

**Timely Filed Opt-Outs, Not Withdrawn**
**as of May 21, 1997**

**In Alphabetical Order**

| .ST NAME | FIRST NAME | SSN | DATE OPT-OUT FILED |
|---|---|---|---|
| ALLEN | CATHERINE | | 03/06/97 |
| ANDERSON | LILLIAN D. | | 04/02/97 |
| *BATTISTA | JEANETTE | | 04/07/97 |
| *BENEDICT | SHIRLEY A. | | 04/23/97 |
| BREGE | SHELLEY MAY | | 04/14/97 |
| BUCHANAN | JUNE MARIE | | 04/22/97 |
| BUNKER | LINDSAY | | 03/03/97 |
| CASTAGNE | VIRGINIA | | 03/21/97 |
| *CASTRO | GLORIA GUADALUPE | | 05/02/97 |
| *CLINGER | LISA ANN | | 03/21/97 |
| COLLARD | RUTH ELIZABETH | | 04/28/97 |
| *COVER | ANNA J. | | 04/07/97 |
| DALY | LORI | | 03/28/97 |
| DAVIS | DOROTHY J. | | 04/10/97 |
| *DELARM | NELLY | | 04/16/97 |
| DEREUS | CELIE | | 03/27/97 |
| DIXON | MARY | | 03/10/97 |
| *DOCKRAY | NANCY | | 03/21/97 |
| ELLIS | VICTORIA | | 04/11/97 |
| ESPOSITO | CARLA JEAN | | 04/11/97 |
| FENLASON | JULIE DAWN | | 04/02/97 |
| GALLO | ANDREA MARIE | | 03/17/97 |
| GARCIA | MARIA | | 03/14/97 |
| GRIFFITH | YAVETTE L. | | 04/28/97 |
| GRINDSTAFF | TAMMY LYNN | | 04/24/97 |
| HAMMETT | YVETTE | | 03/07/97 |
| HAYS | LINDA LOUISE | | 03/24/97 |
| HENDRICKSON | AIMEE | | 03/05/97 |
| HILGENDORFF | ANN MARIE | | 03/17/97 |
| . HUCKABY | CATHERINE C. | | 03/10/97 |
| *JOHNS | RAMONA E. | | 04/07/97 |
| . JOSEPH | LINDA | | 04/28/97 |
| . JOYNER | KRISTIN DAWN | | 04/07/97 |
| *KEYES | CAROLANN CAHILL | | 03/21/97 |
| . KURSCHNER | HELEN | | 03/31/97 |
| . LEBRON | JACQUELINE | | 04/23/97 |
| . LEE | DONNA | | 03/11/97 |
| .*LILLY | STELLA FLORINE | | 04/18/97 |
| .*LOPEZ | NIDIA | | 04/07/97 |
| . LYNCH | KARA | | 03/19/97 |
| . MALLONIK | MARGARET | | 03/05/97 |
| . MARKOWITZ | OLIVE M. | | 04/28/97 |

**Exhibit A - Page 1**

| T NAME | FIRST NAME | SSN | DATE OPT-OUT FILED |
|--------|-----------|-----|------|
| MARSHALL | DAWN MELISSA | | 04/16/97 |
| MCDANIEL | NAN F. | | 03/28/97 |
| MEEK | GUNNEL ULRICA | | 03/20/97 |
| MOODY | JENNIFER ANN | | 04/07/97 |
| MOORE | VIOLET | | 03/21/97 |
| NEIGHBOURS | SANDY | | 03/21/97 |
| NORRIS | LAURA ANNE | | 03/31/97 |
| OLIVER | STEPHANIE RENEE | | 04/21/97 |
| PENNELL | JEAN | | 03/03/97 |
| QUINTO | SHIRLEY | | 03/13/97 |
| REBSTOCK | LINDA | | 04/16/97 |
| REED | KIMBERLY DAWN | | 04/24/97 |
| ROBINSON | TAMMY | | 03/14/97 |
| RODRIGUEZ | JOSEPHINE | | 04/28/97 |
| SEKAC | CHIN S. | | 03/21/97 |
| SEYMOUR | TRACY L. | | 03/24/97 |
| SHANABERGOR | MELODY | | 03/12/97 |
| SHENK | BETTY J. | | 03/05/97 |
| SIMAKIS | DEBRA LEE | | 04/28/97 |
| SMITH | LISA RENEE' | | 04/21/97 |
| SMITH | RENEE | | 03/06/97 |
| SOUTH | JILL F. | | 04/24/97 |
| STEPHENS | EDITH | | 03/10/97 |
| TAYLOR | LANA MARIA | | 03/31/97 |
| THURLOW | MAUREEN ANN | | 03/17/97 |
| TORO | MARIA ELENA | | 04/16/97 |
| TREVISANI | FRANCINE | | 03/06/97 |
| WALKER | SHIRLEY A. | | 04/24/97 |
| WELCH | LINDA ANN | | 03/24/97 |
| WITTENMYER | DEBORAH | | 03/21/97 |
| WOOD | CHER LYN | | 03/26/97 |
| WOOD | MELISSA | | 03/05/97 |

Exhibit A - Page 2